518 So.2d 640 (1987)
William A. SHERROD and Brenetta Sherrod
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and Columbus Orthopedic Clinic, P.A., and Dr. Charles Rhea.
No. 57389.
Supreme Court of Mississippi.
December 16, 1987.
*641 Gary Street Goodwin, Goodwin & Goodwin, Columbus, for appellants.
Taylor B. Smith, Threadgill, Smith, Sanders & Jolly, J. Gordon Flowers, Gholson, Hicks & Nichols, Columbus, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a rather sad suit by an uneducated, injured laborer, who made a modest settlement of his workers compensation claim and then sued his treating physician, charging malpractice, and the compensation insurance carrier, alleging a bad faith refusal tort. The laborer's plight evokes sympathy, but he has offered nothing to show a viable claim against any Defendant. We affirm the judgment summarily dismissing all claims.

II.

A.
Today's unfortunate tale is told most fully through the eyes of William H. Sherrod. Sherrod, thirty years old, married and the father of three, lives in Columbus, Mississippi. His education is quite limited. Sherrod suffered back, wrist, and mostly knee injuries when he fell down the stairs while working at Columbus Brick Company. The accident occurred on a Friday in April or May of 1983.
Sherrod ultimately was treated by Dr. Charles Rhea at Columbus Orthopedic Clinic. Dr. Rhea told Sherrod the wrist and back would heal themselves but performed an arthroscopic meniscectomy on Sherrod's knee in September of 1983. About three months after the operation, Sherrod returned to work with Columbus Brick until May of 1984. He then filed a workers' compensation claim against his employer and United States Fidelity and Guaranty Company, its compensation insurance carrier.
Sherrod returned to work in September, but in December of 1984, Dr. Rhea performed further arthroscopic surgery. Three days later a blood clot was removed. On March 14, 1985, Dr. Rhea informed Sherrod that he was able to return to work. However, two days earlier, Sherrod's attorney had sent him to see another physician, Dr. John McFadden, who told him that he should not return to work.
Needing money, Sherrod returned to Columbus Brick but was told he couldn't be rehired until he brought a release from his doctor. However, Sherrod did not go back to Dr. Rhea to get such a release. Dr. McFadden would not give him such a release.
When USF & G received Dr. Rhea's opinion that Sherrod was able to go back to work, it stopped paying temporary benefits. However, Sherrod did not complain of this to his USF & G representative because he didn't know to do that. Two months later, Sherrod tried again to get his job back with Columbus Brick only to be told that he still needed a release.
Sherrod ultimately settled his compensation claim, with USF & G paying him $10,500.00.

*642 B.
On August 8, 1985, William H. Sherrod and his wife, Brenetta, filed suit in Circuit Court of Lowndes County, Mississippi. He named Dr. Charles Rhea and the Columbus Orthopedic Clinic, P.A., as Defendants and alleged that Dr. Rhea "wrongfully and intentionally stated that the Plaintiff was able to return to work" on March 14, 1985. Sherrod also sued USF & G and alleged that it "intentionally and wrongfully discontinued temporary total disability benefits due Plaintiff William Sherrod." The complaint continues that the acts committed by USF & G and its agents were "an intention [sic] infliction of mental and emotional distress and furthermore, a breach of the contract of insurance for which the Plaintiff was a third party beneficiary." In the alternative, Sherrod's amended complaint added, if the Clinic and Dr. Rhea were not agents of USF & G, "they are liable in the alternative independently and vicariously for intentional infliction of emotional distress" and Dr. Rhea and Columbus Orthopedic Clinic are separately liable "for their intentional departure from the standard of medical care owed to the Plaintiff." Sherrod asked for $45,000.00 in damages ($20,000 compensatory and $25,000 punitive).
On September 6, 1985, Columbus Orthopedic Clinic and Dr. Rhea filed a motion for summary judgment with their answer to the complaint. USF & G filed a similar motion on January 13, 1986. On January 25, 1986, the Circuit Court entered summary judgment, dismissing Sherrod's claim against the Clinic and Dr. Rhea. On February 25, 1986, summary judgment for USF & G followed. From these judgments, Sherrod appeals.

III.
On appeal, Sherrod challenges the summary judgments entered in favor of all three Defendants. Although we will consider the claims against Columbus Orthopedic Clinic, P.A., and Dr. Rhea separately from the claims against USF & G, it will be well to recite at the outset the increasingly familiar principles regarding summary judgment. All Defendants proceeded under Rule 56(c) which provides in relevant part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Not all fact issues preclude summary judgment, only those regarding material facts. Anderson v. Liberty Lobby, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986) is persuasive.
... The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no issue of material fact.
* * * * * *
As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted... .
We have employed this standard in Vickers v. First Mississippi National Bank, 458 So.2d 1055, 1061 (Miss. 1984):
Not all disputed issues of fact may be sufficient to defeat a motion for summary judgment or to require a trial on the merits; only material issues of fact. Put another way, if, viewing the evidence in the light most favorable to the party against whom the motion has been made, that party's claim or defense still fails as a matter of law, summary judgment generally ought to be granted, even though there may be hot disputes regarding nonmaterial facts.

IV.
We consider first Sherrod's claim against Dr. Rhea and Columbus Orthopedic Clinic. Sherrod argues that the record reflects issues *643 of fact precluding entry of summary judgment.
What facts are material is a function of the applicable substantive law determined by reference to the claims and defenses asserted in the pleadings. Here we encounter some difficulty for Sherrod's claim is to say the least unorthodox. As best we can decipher it, he is claiming that Dr. Rhea "wrongfully and intentionally" formed the opinion in March of 1985 that Sherrod was able to return to work when in fact he was not so able. The complaint then charges that Dr. Rhea "wrongfully and intentionally" reported to the Mississippi Workmen's Compensation Commission and to USF & G that Sherrod had reached maximum medical improvement and was able to return to work.
Sherrod was given the opportunity to flesh out his claim in discovery. In his deposition, Sherrod said he was suing Dr. Rhea because his health was not in perfect condition.
Q. You are suing him because of your health?
A. Yes, sir, because, you know.
Q. Because what?
A. Because, you know, my knees and things, you know, and I feel that, you know, he should know not, to took me for my word, you know, that I was hurting.
Q. Are you suing him simply because you don't think your knee is in perfect condition or are you suing him because he sent you back to work?
A. No, sir. I am, you know, my health is not in perfect condition.
Q. You are suing him because your health is not in perfect condition?
A. Yes, sir.
Q. Any other reason you are suing him, sir?
A. No, sir.
Dr. Rhea states in his affidavit that he first attended Sherrod on July 6, 1983. "I assume Mr. Sherrod came to see me of his own accord, but, though I do not know, he may have been referred by his employer... . So far as I know, Mr. Sherrod has never been referred or directed to me by United States Fidelity and Guaranty Company." Dr. Rhea states that, while he submitted periodic reports to USF & G,
I never had any agreement, implied or otherwise, with United States Fidelity and Guaranty Company to perform any services on their behalf. Rather, my only interest in this matter has been to act as a physician in my treatment of Sherrod and in all my endeavors I have attempted in the utmost good faith to fulfill and comply with any appropriate standard of care as an orthopedic surgeon. In my opinion as a physician I have met this standard.
Dr. Rhea denies ever having "engaged in any act or plan to inflict any mental, emotional, or any other distress upon Mr. Sherrod."
Accompanying the affidavit are reports concerning Sherrod's condition at each office visit from July 6, 1983, to March 14, 1985. The final Workers' Compensation medical report states that Sherrod reached maximum medical improvement and was ready to return to work as of March 14, 1985. The only permanent disability recorded was a five percent impairment to the patient's right knee.
The record also includes the deposition of Dr. John G. Gassaway. Gassaway states that he saw Sherrod twice, the first time on June 24, 1985. Gassaway assigns a twenty percent permanent impairment to Sherrod's knee but equivocated on whether Sherrod had reached maximum medical recovery. He added that because of Sherrod's "repeated problems with work ... and increasing disability" "the man never got back in shape to get back to work, I don't believe, at any time. He may not in the future, as far as that's concerned, but he had not up to that point [July 10, 1985]."
Dr. Rhea had a duty to render to Sherrod professional services consistent with that objectively ascertained minimally acceptable level of competence he may be expected to apply given the qualifications and level of expertise he holds himself out as possessing and given the circumstances of the case. Hall v. Hilbun, 466 So.2d 856, 871 (Miss. 1985). And the same of his professional *644 association, Columbus Orthopedic. There is not one iota of evidence in this record that Dr. Rhea fell below this standard. Neither in the affidavit of Dr. John McFadden nor in the deposition of Dr. John G. Gassaway is there any testimony, opinion or otherwise, that Dr. Rhea failed in any duty he owed Sherrod.
The fact that other physicians may have disagreed with Dr. Rhea's opinion that Sherrod was able to return to work is hardly the stuff of which a successful damage suit is based. Moreover, Sherrod has provided us nothing tending to show that Dr. Rhea or Columbus Orthopedic Clinic intentionally, negligently or otherwise inflicted upon him any mental or emotional distress, assuming arguendo a duty in that regard.
The Circuit Court correctly held that, with respect to Sherrod's claim against Dr. Charles Rhea and Columbus Orthopedic Clinic, P.A., there was no genuine issue of material fact and that each of these Defendants was entitled to judgment as a matter of law. The assignment of error is denied.

V.
Sherrod next urges that we reverse the judgment below insofar as it summarily dismissed his suit against USF & G. Here Sherrod's complaint is more procedural. He says the Circuit Court jumped the gun and heard the motion eight days after filing when Rule 56(c) requires ten.
What happened is this. USF & G filed its motion for summary judgment on January 13, 1986. Three days later USF & G filed an affidavit of its claims supervisor, Mark Leonard. That affidavit stated that USF & G had relied on Dr. Rhea's report in terminating benefits to Sherrod, but that there was no conspiracy and that USF & G "at all times" was acting in good faith.
On January 14, Sherrod objected to the hearing and noticed deposition of Leonard and requested issuance of subpoenas. On the day of the hearing, January 21, 1986, Sherrod filed a motion for a stay "on the motion for summary judgment until all pending discovery which has been filed at this time is completed... ." Sherrod argued in the motion that it "would be unjust in this cause to grant summary judgment without the defendant having had the opportunity to cross-examine" the claims adjusters for USF & G. The Circuit Court proceeded to hear the motion but made no disposition thereof. (Part IV reflects that the summary judgment motions of Dr. Rhea and Columbus Orthopedic Clinic were ruled on, but there was no timing problem there.)
An agreed order on discovery depositions, filed February 12, 1986, and signed by the Circuit Judge, provided that the depositions of the claims adjusters, Leonard and Roger Lawson, were rescheduled for Thursday, February 13, and "a ruling on the pending motion for summary judgment by all defendants in this case is stayed until those depositions have been taken and transcripts filed in the court for consideration." Those depositions were filed on February 24.
On the 25th of February, the Circuit Court entered summary judgment for USF & G. The Court reasoned that, to prove a bad faith claim against USF & G, Sherrod would have had to show (1) a contract between USF & G and Sherrod's employer which was intentionally breached; (2) an intentional refusal to pay the workers' compensation claim; (3) the absence of a legitimate reason for not paying the claim; and (4) actual knowledge on the part of USF & G that there was no legitimate reason.
Examination of the record before this Court reveals that the record is completely devoid of any evidence of a contract which was breached in any manner, intentional refusal on the part of USF & G to pay the claim at issue, and actual knowledge on the part of USF & G that there was no legitimate reason to stop paying the claim.
Quite arguably, a technical violation of the advance notice provisions of the Rules occurred. USF & G mailed the motion for summary judgment and notice of the motion on January 10, 1986. Under Rule 6(e), Miss.R.Civ.P., three days would be added to the ten prescribed by Rule 56(c) to allow for mailing. Not counting the 10th, then, *645 (see Rule 6(a)) the motion was heard eleven days after the mailing of notice, two days short of that required. Pope v. Schroeder, 512 So.2d 905 (Miss. 1987), takes a dim view of violations of the ten day notice period of Rule 56 and correctly so. See also Walker v. Cleveland Lumber Co., Inc., 512 So.2d 695, 696 n. 1 (Miss. 1987).
In Ikerd v. Lapworth, 435 F.2d 197, 203 (7th Cir.1970), the trial judge granted the defendant's motion for summary judgment nine days after notice was served to the plaintiff. The appellate court refused to reverse, as the plaintiff had pointed
to nothing in the record which shows that he attempted to present any counter-affidavit or other material for the court's consideration during the ten day period or that he at any time called the court's attention to its oversight in disposing of the motion one day earlier than Rule 56(c) provides and requested that the ruling be reopened for his presentation of such materials and for argument. [He] makes no claim of any specific resulting prejudice, and under the circumstances we are unable to perceive how any prejudice resulted from this wholly insignificant technical oversight much less such prejudice as would support a reversal.
Ikerd, 435 F.2d at 203.
In Marshall v. City of Cape Coral, Fla., 797 F.2d 1555, 1562 (11th Cir.1986), the Eleventh Circuit noted that, while it often spoke of the 10-day notice requirement of Rule 56(c) in terms of a "bright line" test, the Court would apply harmless error analysis where plaintiff's counsel never suggested to the trial court that he expected to have evidence in support of his claim nor was any such assertion made on appeal. See also Gutwein v. Roche Laboratories, 739 F.2d 93, 96 (2d Cir.1984) ("we believe that where a party claims an inability to prepare adequate opposition to a motion for summary judgment within a shortened response period, the nonmoving party must be afforded the full response period mandated by Rule 56(e) absent reason to believe that the claim is demonstrably frivolous."); Tyler v. Harper, 744 F.2d 653, 657-58 (8th Cir.1984); and Hoopes v. Equifax, Inc., 611 F.2d 134, 135-36 (6th Cir.1979).
What is important today is that the Circuit Court did not rule on USF & G's motion until Sherrod had completed the discovery he desired. Only after the Leonard deposition was filed did the Court rule. To be sure, the Court should not have heard the motion without full compliance with the ten day notice rule. But where ruling is withheld pending completion of discovery, violation of the time requirement of Rule 56(c) will often, as here, be harmless.
On the merits we refer primarily to the deposition of claims supervisor, Mark Leonard. Leonard admits that the letter concerning Sherrod's incapacity was received by USF & G. He states that USF & G decided to stick with Dr. Rhea's report until something more conclusive was determined regarding Sherrod's injury. USF & G suggested Sherrod see a doctor of USF & G's choosing. Sherrod's counsel refused at first but the parties eventually agreed to send Sherrod to a Dr. Fernandez. Fernandez reports that Sherrod's back pain is the result of his gait, but Fernandez claims he is not qualified to give an opinion on the knee. Sherrod was then sent to Dr. Gassaway by agreement between USF & G and Sherrod's counsel. The claim was then being handled for USF & G by Roger Lawson, who, Leonard says, felt that Dr. Gassaway's report did not contradict Rhea's to the point where "we would be compelled to not continue to rely on Dr. Rhea's report." Gassaway's twenty percent permanent partial disability rating was an industrial rating, Leonard points out, while the five percent assigned to the knee by Dr. Rhea was a functional rating.
Sherrod's claim against USF & G is a bad faith refusal tort. See McCain v. Northwestern National Insurance Co., 484 So.2d 1001 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288 (Miss. 1985). Sherrod has offered nothing to show that USF & G acted out of malice, with gross neglect, or otherwise tortiously. He has presented no genuine issue of material fact. Rather, on these facts we find *646 that USF & G was entitled to judgment as a matter of law. Thus seen, violation of the ten day rule of Rule 56(c) was doubly harmless.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in result only.