**Claude Anthony RICHARDS, Plaintiff,**

**v.**

**AMERISURE INSURANCE COMPANY and White Rose, Inc., d/b/a White Rose Rental Laundry, Defendants.**

**Civil Action No. 3:94–cv–717WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 16, 1996.

Paul A. Koerber, Jackson, MS, for plaintiff.

Douglas R. Duke, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, for defendants.

## *MEMORANDUM OPINION AND ORDER*

WINGATE, District Judge.

Before this court is the motion of the defendants for summary judgment pursuant

to Rule 56(b),[1] Federal Rules of Civil Procedure. Originally filed in state court, this lawsuit was removed to this court by defendants Amerisure Insurance Company and White Rose, Inc., D/B/A White Rose Rental Laundry, in accordance with Title 28 U.S.C. § 1441(a)[2] on the basis of Title 28 U.S.C. § 1332,[3] diversity of citizenship.[4] Plaintiff Claude Anthony Richards filed this lawsuit against the defendants, charging them with bad faith breach of their contractual obligation to pay plaintiff workers' compensation benefits. By their present motion before the court, defendants contend that both the applicable law and undisputed material facts favor a judgment in their favor. Having heard and studied the various arguments of the parties under the command of *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), this court finds itself in agreement with the defendants and hereby grants summary judgment in their favor.

## I. *PERTINENT FACTS*

The factual backdrop pertinent to this case began on September 24, 1992, when the plaintiff, Claude Anthony Richards (hereinafter "plaintiff"), while going about his routine duties as a route salesman and truck driver for the defendant White Rose, Inc., d/b/a White Rose Rental Laundry (hereinafter "White Rose"), was rear-ended by another automobile and suffered a neck injury. At the time of this work-related injury, the workers compensation carrier for White Rose was Continental Insurance Company (hereinafter "Continental"). Immediately after the accident, says plaintiff, his condition worsened progressively and he sought medical treatment at an emergency care clinic. According to plaintiff, the emergency clinic's physician took x-rays which revealed nothing unusual. Plaintiff says that in order to relieve his symptoms of pain and stiffness, the emergency clinic physician gave him a prescription for aniprox. Plaintiff says he took three days off from his employment and his condition seemed to improve. However, over time the symptoms persisted and plaintiff says he was advised to see a doctor. Plaintiff then consulted Dr. Isaac A. Aultman, White Rose's company physician, on February 1, 1993, and was found to have a herniated cervical disc in the C6–7 region of his spine. Dr. Aultman referred plaintiff to Dr. John P. Gorecki, a neurologist, who treated plaintiff with rest, pain relievers and traction. Plaintiff was released to return to work on March 3, 1993. Dr. Gorecki advised plaintiff to limit the amount of heavy lifting he performed on the job. The cost of Richard's medical consultation and treatment was paid by Continental, the workers compensation carrier for White Rose at the time of plaintiff's accident.

Plaintiff returned to work and performed his duties without incident until July 20, 1994. On that date, plaintiff says he was picking up a relatively light bag of laundry when he felt a sensation of tingling and pain which traveled down his spine and into his extremities. Over the next few days, plaintiff continued to work, but he says he suffered symptoms of increasing stiffness, numbness, and pain. Plaintiff revisited Dr.

1. *Rule 56(b)* of the Federal Rules of Civil Procedure provides:

   (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 28 U.S.C. §§ 1441(a) provides:

   Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

3. Title 28 U.S.C. § 1332 provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

   (1) citizens of different States; ...

4. Plaintiff is a resident of Rankin County, Mississippi. Defendants Amerisure Insurance Company and White Rose are residents of the States of Michigan and Tennessee respectively.

Aultman on July 27, 1994, and again on August 1, 1994. What initially was diagnosed as a severe neck strain was found to be a large right focal herniation of Richard's cervical disc at the C6–7 region. Plaintiff was referred for treatment to another neurosurgeon, a Dr. E.E. Robinson, on August 3, 1994. Dr. Robinson's statement dated that same day says that plaintiff was advised of the surgical options available to correct the herniation of the cervical disc. The statement also says that plaintiff denied any other accidents or serious injuries and that the present problem began about one month before "without any real known cause, accident, injury or other such." Dr. Robinson's statement also notes that plaintiff was aware of his herniated disc problem in early 1993, and that he had done "fairly well" with "some ups and downs" until his visit to Dr. Aultman in August of 1994. Additionally, plaintiff's own statement dated August 9, 1994, says that he coped with pain after his 1992 accident which "never did completely leave me."

At the time plaintiff revisited Dr. Aultman in August of 1994, the defendant Amerisure Insurance Company (hereinafter "Amerisure") had replaced Continental as the workers compensation carrier for White Rose. Amerisure conducted its investigation of plaintiff's claim for benefits and entered its Notice of First Payment in the amount of $243.75 with the Mississippi Workmen's Compensation Commission on August 12, 1994. However, on September 1, 1994, Amerisure entered a Notice to Employee of Suspension of Payment. Amerisure's reason for suspension as stated on the Notice was that the "[m]edical report indicates current problems related to 9–'92 work injury." Inasmuch as Continental was White Rose's compensation carrier at the time of plaintiff's September, 1992, accident, Amerisure concluded that it was not the carrier responsible for plaintiff's compensation payments. Subsequently, Continental entered its Notice of First Payment in the amount of $227.18 on October 24, 1994. Continental continued providing workers' compensation benefits to plaintiff, including payments for plaintiff's surgery.

On November 16, 1994, plaintiff filed the instant complaint against his employer White Rose and Amerisure for bad faith breach of contract. According to the complaint, White Rose and Amerisure are liable to pay compensation for plaintiff's injury which occurred on July 20, 1994. Furthermore, according to the complaint, White Rose and Amerisure intentionally and with reckless disregard for plaintiff's rights failed and refused to provide coverage for or to investigate adequately the circumstances of the alleged July 20, 1994, injury. Plaintiff's complaint asks for $500,000.00 in compensatory damages and $1,500,000.00 in punitive damages. Amerisure and White Rose respond that Amerisure, relying on the statements of Dr. Robinson and of the plaintiff himself, discontinued payments only because of its determination that it was not the compensation carrier responsible for costs related to plaintiff's 1992 neck injury.

## II. *APPLICABLE LAW*

### A. *Summary Judgment Standard*

The plain language of Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant must present sufficient evidence to establish the existence of each element for which the movant bears the burden of proof in order to survive a motion for summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The mere existence of a factual dispute does not by itself preclude the granting of summary judgment. The requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *St. Amant v. Benoit,* 806 F.2d 1294, 1296–97 (5th Cir. 1987).

### B. *Arguable Basis?*

In order to recover on a bad faith breach of contract claim, an insured has the

burden of showing that the insurer denied the claim (1) without an arguable [5] or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights. *United States Fidelity & Guaranty Company v. Wigginton,* 964 F.2d 487, 492 (5th Cir.1992), citing *Dunn v. State Farm Fire and Casualty Co.,* 711 F.Supp. 1362, 1364 (N.D.Miss.1988), *aff'd,* 927 F.2d 869 (5th Cir.1991). The insurer need only show that it had reasonable justifications, either in fact or in law, to deny payment. *Id.* Moreover, whether an insurer had an arguable reason to deny an insured's claim is an issue of law for the court. *Id.; Banker's Life and Casualty Company v. Crenshaw,* 483 So.2d 254, 269 (Miss.1985), *aff'd,* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). In deciding whether an insurer had an arguable basis to deny insurance liability, Mississippi courts usually apply the "directed verdict test." Under this test,[6] unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most instances. *Dunn v. State Farm Fire & Casualty Company,* 927 F.2d 869, 873 (5th Cir.1991), citing *Blue Cross & Blue Shield v. Campbell,* 466 So.2d 833, 843 (Miss.1984) ("[U]nless the trial judge grants a directed verdict to the insured plaintiff on the contract claim, then, as a matter of law, the insurance carrier has shown reasonably arguable basis to deny the claim ... in the vast majority of cases."); *see also Reece v. State Farm Fire & Casualty Co.,* 684 F.Supp. 140, 146 (N.D.Miss.1987) (when plaintiff is not entitled to directed verdict on policy claim, it "necessarily follows that [there was] an arguable reason for denying the claim").

■ In the instant case, this court finds that Amerisure's reliance upon the statement of Dr. Robinson dated August 3, 1994, and plaintiff's statement dated August 9, 1994, provided sufficient arguable reason for Amerisure's suspension of payment.[7] Amerisure acted upon the reasonable belief that all of plaintiff's symptoms arose from his accident in September of 1992. This belief was formed from plaintiff's statement that the pain from his September, 1992, injury never left him and the statement of Dr. Robinson that there was no other injury or accident to account for the recurrence of the plaintiff's symptoms. Dr. Robinson's report is impactful. In his report of August 3, 1994 addressed to Dr. Aultman, Dr. Robinson makes the following observations:

> I saw your patient, Mr. Claude Richards, in the office today and certainly do appreciate you referring him to me.
>
> As you know, he is a thirty-seven year old white male who comes in with the chief complaints of neck, right shoulder and arm pains.
>
> His history is that of doing well without difficulties until September, 1992 when he was driving and was hit-from-behind in a motor vehicle accident. He was wearing seatbelts and was not knocked out, but was thrown and jerked around with his neck and back, but didn't think he was hurt, just thought he was shook up and kept on working. Over the next several days he gradually worsened such that he had to go see a doctor, was checked, x-rayed and treated and seemed to get some better, but

5. An "arguable reason" is defined by the Mississippi Supreme Court as follows: An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts. *Blue Cross & Blue Shield, Inc. v. Campbell,* 466 So.2d 833, 851 (Miss.1984).

6. The directed verdict rule does not apply when " 'the jury is asked to reject on grounds of deliberate falsehood or fabrication (or misrepresentation) the insurer's defense to the underlying contract claim.' " *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1183–86 (Miss.1990) (quoting *Campbell,* 466 So.2d at 852).

7. Amerisure also claims that it relied upon the advice of counsel. Plaintiff has before the court a motion seeking to require Amerisure to produce correspondence between Amerisure and its lawyer, Mr. Joseph T. Wilkins, III. Defendants have not responded. Hence, since this defense of attorney-reliance is yet the focus of a discovery fight, and since the defendants' bases for arguable reason is so clear from the plaintiff's statement coupled with Dr. Robinson's report, this court need not address the issue.

then had spells off and on and saw 2–3 doctors until February, 1993 when he just couldn't keep going. At that time he states he was evaluated further by you and was seen, evaluated and treated by Dr. Gorecki and sometime during this he went to see a chiropractor and was treated further and this seemed to definitely help and he got better. He states he was told on studies at that time that he had a herniated cervical disc and, while surgery was talked about, apparently it was not encouraged. He states that for a year or more, meaning from spring, 1993 until the past month, he has done fairly well with some ups and downs, but no real problems.

*The present problem began about a month ago or so without any real known cause, accident, injury or other such and he began again with some neck soreness and aching that gradually worsened, spreading across his shoulders, the base of his neck, shoulders and out into the right shoulder.* (emphasis added)

* * * * * *

His past history is that of good health in general otherwise. He states that he had an appendectomy at about age nineteen and he *denies any other accidents or serious injuries,* other than the present illness above. He denies any other serious illnesses. (emphasis added)

* * * * * *

Physical examination reveals a well developed, well nourished, stocky built, adult white male who is *alert, oriented and gives a fairly good history.* (emphasis added)

* * * * * *

*Examination of the MR scan, which was done on his previous evaluations and he brings in today for review, does reveal evidence of a C6–7 herniated disc type problem which is consistent with his complaints and findings.* (emphasis added) I spent some time talking to Mr. Richards as to the findings, working diagnosis, the various choices and options from continuing to live with this on further conservative measures versus re-evaluation, including cervical myelography, etc. and the possibilities of surgery in the way of an anterior cervical discectomy and anterior cervical fusion. The procedure, possible outcome, complications and all were discussed at length with him.

These statements, coupled with plaintiff's own damaging statement that the pain from his September, 1992, injury never left him, are certainly sufficient to raise one's suspicions that the plaintiff may have feigned the alleged July 20th injury. Plaintiff waited days after the alleged injury to report it and no one has suggested that there are any witnesses to the occurrence. A fair reading of Dr. Robinson's report indicates that plaintiff, though oriented and mentally clear, advised the doctor that he had suffered no other accidents after the September, 1992, injury and that his recurrent injury had no real known cause or accident.

Plaintiff argues that defendants were under a duty to probe further into other of plaintiff's medical records to determine whether plaintiff's July, 1994, accident amounts to aggravation of the September, 1992, injury. Plaintiff is aggrieved that defendants refused to credit the medical records of Dr. Isaac A. Aultman which show that on August 1, 1994, plaintiff complained of neck pain and numbness in his right hand and arm from an injury of July 20, 1994, occasioned while picking up a bag. Apparently, plaintiff is of the opinion that these medical records substantiate plaintiff's claim, even though the statements therein are merely the uncorroborated ones of plaintiff, and that defendants are obliged to give greater weight to these statements than to Dr. Robinson's report which show that plaintiff denies any injury after September, 1992. This court is simply not persuaded that the credibility index of Dr. Aultman's report is so high as to render the defendants' reliance on Dr. Robinson's report misplaced and unreasonable.

As legal authority for their position, defendants Amerisure and White Rose cite the case of *Sherrod v. United States Fidelity & Guaranty,* 518 So.2d 640, 645 (Miss.1987), wherein the Mississippi Supreme Court upheld judgment as a matter of law in favor of an insurance company that relied on a doctor's statement to discontinue workers' com-

pensation payments. *Sherrod* is quite similar to the instant lawsuit. In *Sherrod*, as in the instant case, there was no showing of gross neglect or malice made by the plaintiff as the reason for discontinuation of payments.

Thus, in the instant case, this court finds that Amerisure relied on the statements of a physician and the plaintiff to discontinue payments. This court is unpersuaded that Amerisure made its decision to suspend payment based on bad faith, gross negligence, malice or reckless disregard for the plaintiff's rights.

Under Mississippi law, punitive damages may be assessed against an insurer only when the insurer denies a claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights. *See Dunn v. State Farm Fire & Casualty Company,* 927 F.2d at 872–73, citing *Aetna Casualty & Surety Company v. Day,* 487 So.2d 830, 832 (Miss.1986); *State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 250–52 (Miss.1985);[8] *Larr v. Minnesota Mutual Life Insurance Company,* 924 F.2d 65, 67 (5th Cir.1991). Inasmuch as this court finds that Amerisure did not act in bad faith when it discontinued payments to the plaintiff, there is no basis for plaintiff's claim for punitive damages. *See Southern United Life Ins. Co. v. Caves,* 481 So.2d 764, 769 (Miss.1985) (failure of plaintiff to obtain summary judgment or directed verdict on policy claim eliminates punitive claim in "great majority" of cases); *and State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d at 254 ("if the plaintiff is not entitled to a peremptory instruction [on the contract claim], it logically follows that a punitive damage instruction should be refused" in all but rare cases).

### C. *Exhaustion of Administrative Proceedings*

Under Mississippi law,[9] an employee may bring a tortious breach of contract action against the compensation carrier for bad faith refusal to provide benefits. *McCain v. Northwestern National Insurance Company,* 484 So.2d 1001 (Miss.1986); *State Farm Fire & Casualty Company v. Simpson,* 477 So.2d 242 (Miss.1985). However, "a prerequisite to the award of punitive damages [under such an action] is the determination that the plaintiff is entitled to contractual damages." *Dial v. Hartford Accident & Indemnity Company,* 863 F.2d 15, 16 (5th Cir.1989), citing *McCain,* 484 So.2d at 1002. Ordinarily, the matter of entitlement is first resolved. Then, should plaintiff prevail on this issue, a plaintiff next pursues the bad faith action. *Dial,* 863 F.2d at 16; *McCain,* 484 So.2d at 1002. Plaintiff, here, has not awaited resolution of his administrative claim before filing this lawsuit. Richards has filed a Petition to Controvert before the Mississippi Workers' Compensation Commission, MWCC No. 9413650–F–2307, styled *Claude A. Richards v. White Rose Laundry, Inc. and Amerisure Insurance Company* to

8. *Simpson* sets forth a number of Mississippi cases on insurance contract punitive damage claims: *Hood v. Moffett,* 109 Miss. 757, 69 So. 664 (1915) (damages for breach of contract are not recoverable unless act or omission constitutes a tort); *American Ry. Express Co. v. Bailey,* 142 Miss. 622, 107 So. 761 (1926) (no punitive damage award except by some intentional wrong, insult, abuse, or gross negligence amounting to independent tort); *D.L. Fair Lumber Co. v. Weems,* 196 Miss. 201, 16 So.2d 770 (1944) (punitive damages may not be recovered for a mere contract violation); *Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 141 So.2d 226 (1962) (punitive damages recoverable when injury shows some element of aggression or some coloring of insult, malice or gross negligence); *Seals v. St. Regis Paper Co.,* 236 So.2d 388 (Miss. 1970) (punitive damages recoverable for a willful and intentional wrong); *Lincoln National Life Insurance Co. v. Crews,* 341 So.2d 1321 (Miss. 1977) (mere denial of claim by insurer does not justify punitive damages); *Standard Life Insurance Co. of Indiana v. Veal,* 354 So.2d 239 (Miss. 1978) (punitive damages are mandated by absence of an arguable reason); *Blue Cross–Blue Shield of Mississippi v. Campbell,* 466 So.2d 833 (Miss.1984); *Southern United Life Insurance Co. and First State Bank of Waynesboro v. Caves,* 481 So.2d 764 (Miss.1985) (failure of plaintiff to obtain summary judgment or a directed verdict on the underlying policy claim eliminates punitive damage issue).

9. Since this court's jurisdictional base is diversity of citizenship, this court applies Mississippi's substantive law to this dispute. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

determine the issue of Amerisure's contractual liability to Richards, if any. However, this matter currently is pending before Administrative Law Judge Charles Pearce.

In *Billingsley v. United Technologies Motor Systems,* 895 F.Supp. 119, 121 (S.D.Miss. 1995), this court, operating under the *Erie* doctrine, was persuaded that the applicable principles of Mississippi law, as determined by federal case precedent, would not permit a bad faith case against a workers compensation carrier to proceed unless complete administrative exhaustion had been obtained. *See Butler v. Nationwide Mutual Insurance Company,* 712 F.Supp. 528, 529 (S.D.Miss. 1989), citing *Powers v. Travelers Insurance Company,* 664 F.Supp. 252 (S.D.Miss.1987) (Barbour, J.); and *Kitchens v. Liberty Mutual Insurance Company,* 659 F.Supp. 467 (S.D.Miss.1987) (Gex, J.). *See also Dial v. Hartford Accident & Indemnity Company,* 863 F.2d 15 (5th Cir.1989).

But, notwithstanding this precedent, this court is of the opinion that where a worker has filed his bad faith action contemporaneously with his administrative proceeding and where on the undisputed material facts the court recognizes immediately that the compensation carrier has an arguable reason for its refusal to pay, the court need not await the resolution of the coverage aspect. In *Kitchens v. Liberty Mutual Insurance Company,* the district court was concerned that a jury in a bad faith action could find for the employee on the compensation issue and then assess a punitive award against the defendant carrier for bad faith conduct only to have plaintiff's administrative claim later result in a finding in favor of the carrier on the compensation issue. And, in *Powers v. Travelers Insurance Company,* the district court believed that the Mississippi Supreme Court did not want bad faith actions to become a device which would deprive the Workers' Compensation Commission of its jurisdiction to determine the right to compensation. The district court concluded that the plaintiff should not be permitted to proceed with his bad faith claim until his administrative remedies were exhausted.

Of course, a claim of bad-faith denial does not reach the jury unless reasonable minds could differ as to the insurance company having a legitimate or arguable reason for denying the claim. *Szumigala v. Nationwide Mutual Insurance Company,* 853 F.2d 274, 280 (5th Cir.1988), citing *Dueringer v. General American Life Insurance Company,* 842 F.2d 127, 130 (5th Cir.1988). In the instant case, this court has found no basis for plaintiff's bad faith claim against the carrier because of the unquestionable presence of an arguable reason for the carrier's suspension of payment. Thus, there is no possibility that the *Kitchens'* fears will be realized here. This court's decision will not conflict with the administrative claim, even if the administrative proceeding finds contractual liability. Any arguable reason for denying a claim will defeat a bad faith award, even if the contract is breached. *Dial v. Hartford Accident & Indemnity Company,* 863 F.2d at 16. Furthermore, this court's determination that Amerisure had an arguable reason for suspending payment to the plaintiff in no way interferes with the jurisdiction of the Workers' Compensation Commission to determine Amerisure's liability for compensation. This court's determination goes to bad faith only, not to the question of contractual liability. Accordingly, this court finds that under the circumstances herein plaintiff's outstanding administrative claim before the Mississippi Workers' Compensation Commission poses no bar to this court's consideration of defendants' motion for summary judgment on the undisputed facts derived from adequate discovery.

Therefore, this court finds that the motion for summary judgment submitted by the defendants Amerisure and White Rose is well taken and the same is hereby granted. A separate judgment shall be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**