831 So.2d 1156 (2002)
Catherine Lynn ADAMS
v.
CINEMARK USA, INC.
No. 2001-CA-01305-SCT.
Supreme Court of Mississippi.
December 5, 2002.
*1157 James F. Steel, Jackson, Donald C. Dornan, Biloxi, for appellant.
Grover Clark Monroe, II, Jackson, Wiley Johnson Barbour, Jackson, for appellee.
EN BANC.
WALLER, Justice, for the Court:
¶ 1. Catherine Lynn Adams brought suit against Cinemark USA, Inc. for injuries *1158 sustained when Weigelia Thomas, a Cinemark employee, struck Adams after refusing to admit Adams and two minors to an R-rated film. The Circuit Court of Harrison County, First Judicial District, granted summary judgment in favor of Cinemark. We affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On February 22, 2000, Catherine Lynn Adams, her fifteen-year-old sister Marie, and Marie's fourteen-year-old friend Amanda traveled to Cinemark's Crossroads Mall Theater in Gulfport to view the R-rated film Scream 3. Cinemark employee Weigelia Thomas was working as a box office employee. Thomas's responsibilities that day included selling tickets to patrons and handling money.
¶ 3. Adams attempted to purchase three tickets for Scream 3 from Thomas. Since the film was R-rated, Thomas requested identification from the three. Adams produced identification for herself and told Thomas that she was Marie's legal guardian[1] and that she had been given permission from Amanda's mother for her to view the film. Thomas refused admission to Marie and Amanda whereupon Adams asked to speak with a manager.
¶ 4. Thomas hailed her manager, Michael Everett, via walkie-talkie. She then asked that Adams step out of the line so that she could continue selling tickets to the other patrons. After waiting for several minutes, Adams stepped back into line and again inquired of Thomas to see a manager. According to Adams, Thomas told her "[t]o get [Adams's] ass up in there and go talk to [the manager herself]." However, according to Thomas, Adams repeatedly interrupted her as she sold tickets to other customers and called her a "bitch." Adams moved to enter the theater and, at that point, Thomas exited the box office, went through some double doors, and confronted Adams. It is undisputed that Thomas struck Adams and then choked her while they were outside of the theater near the double doors. Adams suffered scratch marks on her neck and complained of a tingling sensation about the head. As a result of the altercation, Cinemark terminated Thomas's employment.[2]
¶ 5. Adams sued Cinemark, alleging that Cinemark was vicariously liable for Thomas's actions under the doctrine of respondeat superior. Adams also alleged that Cinemark negligently hired, trained, supervised and retained Thomas.
¶ 6. Following discovery, Cinemark filed a motion for summary judgment, contending that respondeat superior did not apply because Thomas's acts "were undertaken solely for personal motive and not in furtherance of Cinemark's business, thereby placing her acts wholly and completely outside the scope of her employment." Joseph Corbin, a Gulfport Cinemark on-site manager, stated in his deposition that employees were repeatedly instructed never to argue with a patron, always to avoid confrontation, and to summon a manager if a dispute with a patron arose.
¶ 7. After receiving Adams's response, the circuit court granted Cinemark's motion for summary judgment without an oral hearing. It held that "Thomas had abandoned her employment and was about some purpose of her own, not incidental to her employment and not done in the course of and as a means to the accomplishment of the purposes of her employment as a box office cashier." Adams appeals from this adverse ruling.

*1159 STANDARD OF REVIEW

¶ 8. We employ the de novo standard in reviewing a trial court's grant of summary judgment. O'Neal Steel, Inc. v. Millette, 797 So.2d 869, 872 (Miss.2001). In conducting the de novo review, we look at all evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 847 (Miss.2001) (citing Aetna Cas. & Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996)). This evidence must be viewed in the light most favorable to the party against whom the motion for summary judgment has been made. Leslie v. City of Biloxi, 758 So.2d 430, 431 (Miss. 2000).

DISCUSSION

I. WHETHER SUMMARY JUDGMENT WAS APPROPRIATE.
¶ 9. Adams asserts that Cinemark is vicariously liable for her injuries under the doctrine of respondeat superior. An employer is liable for the torts of his employee only when they are committed within the scope of employment. Odier v. Sumrall, 353 So.2d 1370, 1372 (Miss.1978). To be "within the scope of employment," the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business. Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250, 252 (1945); Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713, 714 (1928). Also included in the definition of "course and scope of employment" are tortious acts incidental to the authorized conduct. Creekmore, 23 So.2d at 252. Stated another way, a master will not be held liable if the employee "had abandoned his employment and was about some purpose of his own not incidental to the employment." Odier, 353 So.2d at 1372 (citing Loper v. Yazoo & M.V.R. Co., 166 Miss. 79, 145 So. 743 (1933); Canton Cotton Warehouse Co. v. Pool, 78 Miss. 147, 28 So. 823 (1900)). That an employee's acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to that conduct. Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107, 109 (1933).
¶ 10. It is obvious that Thomas's tortious act of assaulting Adams was not authorized or in furtherance of Cinemark's business. We must therefore determine whether Thomas's conduct was "incidental to" her employment. Such a determination is highly fact sensitive such that it can have no fixed legal meaning. Loper, 145 So. at 745. A multitude of factors and circumstances must be considered, such as Thomas's responsibilities and mind-set, as well as those of a temporal and spatial nature.
¶ 11. Thomas's job description on the date of the incident was "box office cashier." Her only duties were to sell tickets and handle money. She was stationed in a secure box office into which the general public could not gain access. She received substantial training in customer relations which expressly prohibited arguing with and confronting patrons. If a hostile situation arose, a box office cashier was instructed to contact a manager via walkie-talkie so that the manager could diffuse the situation. At no time whatsoever was a box office cashier authorized to interact with patrons other than to sell tickets.
¶ 12. Adams incorrectly characterizes the altercation as Thomas's attempt to carry out Cinemark's policies of preventing minors from viewing certain films. Thomas was allowed to refuse to sell a ticket to someone who was not old enough to see a *1160 certain movie, but she was not allowed to leave the box office.
¶ 13. Thomas's assault of Adams was not incidental to her employment. Adams cites a litany of Mississippi cases imputing liability to employers for the intentional torts of their employees. See Horton v. Jones, 208 Miss. 257, 44 So.2d 397 (1950) (imputing liability to employer cab company for employee driver's hastily driving off in cab still containing plaintiff's possessions because driver could get another fare and make money for his employer); Interstate Co. v. McDaniel, 178 Miss. 276, 173 So. 165 (1937) (imputing liability to employer snack company for employee train car snack vendor's assault and battery of man employee suspected of stealing oranges because said employee was "required to protect it [his inventory] within reasonable bounds from depredations"); Continental Cas. Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935) (imputing liability to employer insurance company for employee agent's calling elderly insured a "liar" and accusing him of fraud because agent was doing assigned job of adjusting a claim); Singer Sewing Mach. Co. v. Stockton, 171 Miss. 209, 157 So. 366 (1934) (imputing liability to employer sewing machine manufacturer for salesman's misconduct in attempting to cultivate personal relations with prospective customer plaintiff because he went to plaintiff's home to sell a sewing machine); Gill v. L.N. Dantzler Lumber Co., 153 Miss. 559, 121 So. 153 (1929) (imputing liability to employer farm for superintendent employee's assault in ejecting plaintiff tenant because superintendent "had authority to let [defendant's] houses and do all things in connection with the tenancy of said houses"); Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713 (1928) (imputing liability to employer for foreman's assault of laborer to prevent laborers from demanding higher wages where foreman could employ and discharge laborers and fix the amount of their wages because such an act was in furtherance of employers's goal of realizing a profit). In all of these cases, the employee was performing his authorized duties, be it driving a cab, protecting inventory, adjusting insurance claims, selling a sewing machine, or ejecting tenants. These cases are distinguishable from the facts of the instant case because Thomas's act was motivated by personal animosity. She was never vested with any duty on that day other than selling tickets. She assaulted Adams because of anger, not because she was concerned about protecting Cinemark's property or increasing Cinemark's profit.
¶ 14. Furthermore, Adams's reliance on Odom v. Hubeny, Inc., 179 Ga.App. 250, 345 S.E.2d 886 (1986) is misplaced and is also misconstrued in the dissent. There, the trial court granted summary judgment to the employer restaurant on the basis that the acts of DeLima, the waitress, were intentional, private, and unrelated to her employment when DeLima grabbed a customer by the hair, punched her in the face, and poured a pot of coffee on her back because of plaintiff's misbehavior. Id. at 887. The Georgia Court of Appeals reversed the summary judgment, noting that DeLima "had been authorized to request a troublesome patron to leave...." Id. Physical contact and interaction with patrons was incidental to, if not a necessary element of, DeLima's job as a waitress. In contrast, Thomas, in her authorized performance as a box office cashier, would have had no opportunity for such interaction.
¶ 15. The dissent misconstrues our discussion of Odom stating that we "agreed that physical contact and interaction with patrons was incidental to, if not a necessary element of, Thomas's employment." We stated above that physical contact was *1161 a necessary element of DeLima's, the waitress in Odom, employment, and not Thomas's employment here.
¶ 16. We find that Adams failed to create a jury issue that Thomas acted within the course and scope of her employment in her assault of Adams. Thomas's acts were not "incidental to" the performance of her duties as a box office cashier. Consequently, the circuit judge did not err in granting summary judgment to Cinemark.
¶ 17. Justice Diaz, in his dissent, asserts more than once that Thomas "was the gatekeeper of Cinemark" and that patrons had to pass through her to gain admission. With all due respect, the dissent's characterization of Thomas's duties and responsibilities is completely contrary to the deposition testimony and submitted documents. Box office cashiers have neither the authority nor the ability to prevent underage patrons from entering the theater. All Thomas could do was refuse to sell a ticket and call a manager. Patrons gain admission by handing a ticket to an usher who controls access to the theater.[3]
¶ 18. The assertions that "Thomas was required to prevent underage patrons from entering the movie theater" and that her actions "may have also been fueled by the responsibility vested in her by Cinemark" find no basis in the record. Thomas knew her actions were in complete derogation of Cinemark policy and testified to as much at her deposition:
Q: Were you aware that arguing with or maybe cussing at or hitting a customer was against Cinemark's policy?
A: Yes.
Q: So you knew that was against policy when you did it?

A: Yes.

Q: Because you said just a minute ago that you pretty much assumed you were fired after the incident?
A: Yes.
Q: Had you been trained that that would be the case?
A: I mean, it was common sense.
(emphasis added).
¶ 19. The dissent even acknowledges the allegations it makes are "speculation that is best resolved by a jury." However, unsupported speculation and allegations are not sufficient to defeat a motion for summary judgment. Reynolds v. Amerada Hess Corp., 778 So.2d 759, 765 (Miss. 2000); Herrington v. Leaf River Forest Prods., Inc., 733 So.2d 774, 779 (Miss. 1999); Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co., 554 So.2d 884, 885 (Miss.1989). See also Hurst v. Ala. Power Co., 675 So.2d 397, 400 (Ala. 1996); Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo.1996); Darrah v. Bryan Mem'l Hosp., 253 Neb. 710, 571 N.W.2d 783, 786 (1998); Howard Hughes Med. Inst. v. Gavin, 96 Nev. 905, 621 P.2d 489, 491 (1980); Paradigm Hotel Mortgage Fund v. Sioux Falls Hotel Co., 511 N.W.2d 567, 569 (S.D. 1994); Wriston v. Raleigh County Emergency Servs. Auth., 205 W.Va. 409, 518 S.E.2d 650, 662 (1999). Given the established facts here in this record, we are inescapably led to the conclusion, as was the trial court, that Adams presented insufficient *1162 evidence to create a jury issue on respondeat superior liability.

II. WHETHER A COURT MAY GRANT SUMMARY JUDGMENT WITHOUT AN ORAL HEARING.
¶ 20. Adams filed her response to Cinemark's motion for summary judgment on June 1, 2001. A hearing on the motion was scheduled for June 11, 2001, but was later postponed and rescheduled for August 6, 2001, at Cinemark's request. The trial court entered summary judgment on July 24, 2001. As a result, Adams asserts that the trial court deprived her of a valuable right afforded under Rule 56(c) of the Mississippi Rules of Civil Procedure by granting Cinemark's motion for summary judgment without conducting a hearing.
¶ 21. A summary judgment may be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c) (emphasis added). Based upon a review of Adams's itemization of undisputed facts and Cinemark's response thereto, the only disputed facts were those concerning the oral exchanges between Adams and Thomas and Adams and the two minor girls. Cinemark never disputed the fact that Thomas left her station in the box office and assaulted Adams or the fact that Adams was injured as a result.
¶ 22. We fail to see how the exact tenor and nature of the words exchanged prior to the assault are material as required by Rule 56(c) to a determination of whether Thomas was acting in the course and scope of her employment as a box office cashier. A fact is "material" if it tends to resolve any of the issues properly raised by the parties and matters in an outcome determinative sense. Wallace v. Town of Raleigh, 815 So.2d 1203, 1208 (Miss.2002); Armistead v. Minor, 815 So.2d 1189, 1192 (Miss.2002); Hudson v. Courtesy Motors, Inc., 794 So.2d 999, 1002 (Miss.2001); Robinson v. Cobb, 763 So.2d 883, 886 (Miss.2000); Powell v. City of Pascagoula, 752 So.2d 999, 1003 (Miss. 1999); Prescott v. Leaf River Prods., Inc., 740 So.2d 301, 309 (Miss.1999). Regardless of the oral exchanges made or even a lack thereof, Thomas clearly had no authority to leave her post in the box office, exit the double doors to the theater, and assault Adams. Furthermore, regardless of the oral exchanges made, we fail to see how such exchanges would assist in proving whether the assault was incidental to Thomas's employment.
¶ 23. Adams argues that the trial court's failure to grant a hearing was "a procedural error which affected Appellant's substantial rights as a litigant." She submits that Rule 56(c) itself clearly contemplates that the trial court will conduct a hearing prior to entering a summary judgment. Rule 56(c) states in pertinent part the following:
(c) Motions and Proceedings Thereon. The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
¶ 24. We do not recognize an explicit or implicit right to a hearing under Rule 56(c) but do so under other rules. M.R.C.P. 78 provides:

*1163 Each court shall establish procedures for prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of; but the judge at any time or place and on such notice, if any, as he considers reasonable may make orders for the advancement, conduct, and hearing of such actions.
To expedite business, the court may make provision by rule or order for the submission and determination of motions not seeking final judgment without oral hearing upon brief written statements of reasons in support and opposition.
(emphasis added). In circuit court, motion practice is regulated by Uniform Circuit and County Court Rule 4.03. Paragraph 5 of Rule 4.03 states that "[a]ll dispositive motions shall be deemed abandoned unless heard at least ten days before trial." (emphasis added).
¶ 25. We have yet to have a case definitively holding that a litigant has a right to an oral hearing on a motion for summary judgment. We have, however, held that such a right exists in the context of a default judgment. In King v. Sigrest, 641 So.2d 1158 (Miss.1994), the Sigrests brought an action to remove a cloud on title to real property. When no answer or responsive pleading was filed within 30 days, the Sigrests forwarded a request for entry of default which the chancery clerk subsequently signed and filed. Id. at 1160. The trial court entered a default judgment without notice of a hearing. Id. In reversing the trial court, we held that M.R.C.P. 55(b)
provides, however, that where a person against whom default is sought has "appeared," that party shall be served with notice of the application at least three days prior to "the hearing of such application." This rule "clearly contemplates that a hearing will be held" and that the party against whom default is sought shall be notified of the hearing. Fortifying this view is our Rule 78, prescribing motion practice, which, unlike its federal counterpart, indicates that only motions not seeking final judgment should by rule or order be disposed of without oral hearing. Miss. R. Civ. Pro. 78.
(citation omitted & emphasis added).
¶ 26. Based upon the foregoing, the trial court in the instant case erred in granting summary judgment without an oral hearing. However, we find such error to be harmless.[4] In Sherrod v. United States Fidelity & Guaranty Co., 518 So.2d 640 (Miss.1987), we applied the harmless error test to a procedural error. The trial court in that case heard a summary judgment motion two days early, or eight days after filing. Id. at 644. Even though the time requirement of M.R.C.P. 56(c) is couched in the imperative, we held that "[t]o be sure, the Court should not have heard the motion without full compliance with the ten day notice rule. But where ruling is withheld pending completion of discovery, violation of the time requirement of Rule 56(c) will often, as here, be harmless." Id. at 645. As in Sherrod, *1164 Adams had ample time for discovery prior to the entry of summary judgment.
¶ 27. The Eleventh Circuit also applied the harmless error test in a case in which a magistrate judge violated a mandatory summary judgment procedure rule. Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208 (11th Cir.1995). In Restigouche, a magistrate judge heard argument on the Town of Jupiter's motion for summary judgment at a pretrial status conference after giving the parties only two days' notice. Id. at 1213. The next day Restigouche filed a motion to supplement the summary judgment record. Thirteen days later, Restigouche's motion was denied and summary judgment entered for the Town. Id. Regarding the violation of the ten-day rule, the Eleventh Circuit held:
Even if notice was insufficient under Rule 56(c), we find this error harmless.... The purpose of the 10-day notice rule is to give the non-moving party notice and a 10-day window of opportunity to marshal its resources and present any additional materials and arguments in opposition to the motion. We are convinced that we have before us, on de novo review of the summary judgment motion, all of the facts and arguments that Restigouche would have or could have presented had Restigouche been given the required notice. The magistrate court denied Restigouche's December 2 motion to supplement because Restigouche failed to identify the specific portions of the supplemental materials which would create material issues of fact. Moreover, our independent review of the proffered supplemental materials disclose no genuine issues which would prevent summary judgment.... Because Restigouche has not been deprived of the opportunity to present facts or arguments which would have precluded summary judgment in this case, any violation of the 10-day notice rule is harmless.
Id. (citation omitted & emphasis added). See Lone Star Steel Co. v. Scott, 759 S.W.2d 144 (Tex.Ct.App.1988) (applying harmless error rule to errors "involving the violation of procedural rules couched in mandatory language").
¶ 28. This position also has application in this case. Adams presented no evidence which would defeat Cinemark's motion for summary judgment. It is highly unlikely that any material or pertinent facts would have been disclosed at a summary judgment hearing had it been held. Adams would be ill-served by responding to Cinemark's motion and including 108 pages of exhibits and then waiting until an oral hearing to disclose material facts which would deliver a coup de grâce to Cinemark's motion.
¶ 29. In this case, a summary judgment hearing would have been centered around the oral exchanges prior to Thomas's assault of Adams. Such inquiries would have no bearing in this action alleging vicarious liability. We simply fail to see how the circuit court's grant of summary judgment without an oral hearing nearly two months after Adams's response to Cinemark's motion constituted reversible error when there were no material facts in dispute and a hearing would have been of no utility.
¶ 30. Although M.R.C.P. 78 differs from Fed.R.Civ.P. 78, M.R.C.P. 56(c) is identical to Fed.R.Civ.P. 56(c), and federal courts have ruled that the decision to grant a summary judgment hearing[5] lies with the trial judge:

*1165 Courts generally recognize the advisability of allowing oral argument on summary-judgment motions, but, even the Fifth Circuit now agrees that the court has the power to order summary judgment without a hearing if it feels that sufficient information is available in the pleadings and the papers in support of and opposition to the motion so that a hearing would be of no utility.

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2720.1, at 357 (3d ed.1998) (footnotes omitted & emphasis added). Given the facts of the instant case, an oral summary judgment hearing would have centered around legal arguments since all of the fact-centered issues were immaterial or undisputed.

CONCLUSION
¶ 31. Although the trial court erred in entering summary judgment in favor of Cinemark without an oral hearing, such error was harmless on this record. The trial court did not err in granting summary judgment to Cinemark in the absence of a dispute as to any material fact which would indicate that Cinemark's employee was acting in the course and scope of her employment when she assaulted Adams. Therefore, the Harrison County Circuit Court's grant of summary judgment to Cinemark is affirmed.
¶ 32. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR.
DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. AND GRAVES, J.
EASLEY, J., NOT PARTICIPATING.
DIAZ, Justice, dissenting:
¶ 33. Cinemark placed Weigelia Thomas in a public position. It authorized her to admit or deny entry by patrons into its theater. To gain entrance, a patron had to pass by her. In essence, she was the gatekeeper of Cinemark. In a line of cases more than a century old, this Court has held employers liable for the tortious acts of their employees when the employees' actions were committed within the scope of their employment, whether the act was in the furtherance of their employer's business or merely incidental to their employment. Because I disagree with the majority's conclusion that no material issue of fact existed as to whether Thomas's actions were incidental to her employment, I respectfully dissent.

I
¶ 34. The majority cites numerous cases where this Court has found respondeat superior liability against employers where an employee commits a tort on the job, then it departs markedly from their rationale. The majority tries to distinguish this line of cases from the case at bar by concluding that Thomas's actions were unrelated to her employment and fueled by personal animosity rather than a desire to protect Cinemark's property or increase their profit. However, many of the cases cited by the majority involved *1166 actions of an employee fueled by personal animosity. In fact, with the exception of negligent torts, virtually all torts committed are fueled by some level of personal animosity.
¶ 35. Moreover, in my opinion, the argument that Thomas's actions were fueled by personal animosity and not in the furtherance of Cinemark's business is alone insufficient to dispose of the issue. "The mere deviation or departure by a servant from strict course of duty, although for a purpose of his own, does not in and of itself constitute such a departure from the master's business as to relieve him from liability for the injuries inflicted by the acts of the servant." Colotta v. Phillips, 226 Miss. 870, 875, 85 So.2d 574, 577 (1956). Evaluating this point, this Court in S. & W. Const. Co. v. Bugge, 194 Miss. 822, 13 So.2d 645 (1943), stated:
In such cases as last mentioned the rule to be applied is found in Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507, 509, where the alleged servant was engaged at the time partly in purposes of his own and partly in the furtherance of the business of his employer and within the range of his appointed duties, and there the rule was announced, quoting from the comment under Section 236, A.L.I. Rest. Agency, that "the fact that the predominant motive of the servant is to benefit himself or a third person, does not prevent the act from being in the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is liable if the act otherwise is within the service."
13 So.2d at 646.
¶ 36. The majority's conclusion that Thomas's actions were the product of her ill temper and frustration at being insulted by Adams may be true; however, it may also be true that she left her booth to explain Cinemark protocol to Adams or to calm her down until a manager could arrive or even that she intended on assaulting Adams, but her goal in doing so was to silence Adams's profanity and thereby protect the integrity of her employer's establishment. Somehow Thomas was able to rationalize her actions in her own mind and whether this rationalization included any desire to further her employer's interest is a question better resolved by a jury than by this Court. See Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507 (1930) (where question of whether laundry truck driver was acting within scope of employment when collision occurred while he was returning from dance at which he claimed he solicited business held for jury).
¶ 37. In Interstate Co. v. McDaniel, 178 Miss. 276, 173 So. 165 (1937), this Court found respondeat superior liability when an employee assaulted and battered a patron because the employee was "required to protect it [his inventory] within reasonable bounds from depredations." Id. at 166. The Court found the employee's tort was committed with at least an arguable desire to further his employer's business. Likewise, in the case at bar, Thomas was required to prevent underage patrons from entering the movie theater. If she were to fail in her duties, the theater could be fined or even closed. Though her actions may have been the product of an ill-temper, they may have also been fueled by the responsibility vested in her by Cinemark. Of course, this is speculation. However, it is speculation that is best resolved by a jury, not unilaterally by a judge on a summary judgment motion. Where the evidence is in conflict, questions pertaining to an employee's scope of employment are not to be taken from the jury. Allen v. Ritter, 235 So.2d 253 (Miss.1970).
*1167 ¶ 38. The majority acknowledges, as it must, that a determination of whether Thomas's conduct was incidental to her employment is a "highly fact sensitive" determination and a "multitude of factors and circumstances must be considered, such as Thomas's responsibilities and mind-set." However, it focuses on the idea that Thomas's actions furthered no interest of and was not authorized by Cinemark and affirms the dismissal of Adams's claim, without fully considering Thomas's mind-set that her responsibilities themselves may have created. The majority's analysis simply undervalues the fact that Thomas's job was to decide who was allowed entry into the theater and who was turned away. Regardless of whether Thomas or Adams was responsible for the altercation that ensued after Thomas denied Adams and her minor sister entry into the theater, it is undisputed that it began only after Adams attempted to enter the theater. Thomas's job was to permit and deny entrance into the theater. She was Cinemark's gatekeeper. However unorthodox the methods she chose to employ and regardless of whether she had been instructed by her employer not to leave the booth, it cannot be said that, by confronting Adams when she disobeyed Thomas's instruction to wait until a manager came to her, Thomas definitely was not acting in furtherance of her employer's business or performing an action incidental to her employment. An employee is "[i]n the scope of employment, such that corporate employer is liable to third party for his torts, whenever he is engaged in activities that fairly and reasonably may be said to be incident of the employment or logically and naturally connected with it." Black's Law Dictionary 937 (abr. 6th ed.1991). Because we must give Adams the benefit of every reasonable doubt, summary judgment was inappropriate. Where more than one reasonable inference can be drawn from the evidence, it is a question for the jury. See Loper v. Yazoo & M.V.R. Co., 166 Miss. 79, 145 So. 743 (1933).
¶ 39. Like the snack vendor in McDaniel, Thomas may have merely been trying to protect her employer's business. She may have felt that preventing Adams, an irate customer, from entering her employer's place of business would please her master. In this situation, the words spoken by Adams are important and a material issue of fact a jury should decide. Testimony at trial might explain that Adams's words and demeanor suggested she was going in to try to get Thomas fired or that she was going to become violent herself. In either situation Thomas's actions could have been motivated by a desire, however misplaced, to protect her job and consequently her employer's business. These are genuine issues of material fact, and they should be decided by a jury.
¶ 40. As Odier v. Sumrall, 353 So.2d 1370 (Miss.1978), points out, the inquiry is "Whether an employee's tortious act was done in the course of and as a means to the accomplishment of the purposes of the employment and therefore in furtherance of the master's business." Id. at 1372. Thomas's job was to deny entry to patrons who were not eligible to view certain movies. She had been instructed to command patrons to wait until a manager could be summoned. Adams disregarded Thomas's instructions and attempted to enter the theater. Though they may have been fueled by personal animosity, Thomas's actions may have simply been employed to deny Adams entry into the theater. As her job responsibility was to deny such entry, Thomas's actions would have been consistent with her job responsibilities and in furtherance of Cinemark's business. Regardless of whether Adams's actions in attempting to enter the theater were completely rational or indeed threatening, her *1168 attempt was still against the rules. It was against the protocol of Cinemark, in which Thomas had been instructed. Thomas knew that Adams was supposed to wait outside until a manager came, and she knew it was her job to make sure that is exactly what she did. "Where the servant in committing the wrongful deed, acts about the master's business for which he is employed, the master is liable, although in doing the act, the servant stepped beyond his authority." Horton v. Jones, 208 Miss. 257, 260, 44 So.2d 397, 399 (1950) (citing Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495 (1924)).
¶ 41. The majority finds Adams's reliance on Odom v. Hubeny, Inc., 179 Ga. App. 250, 345 S.E.2d 886 (1986), misplaced. In that case, a trial court's grant of summary judgment to a restaurant after its employee assaulted a patron was reversed. The Georgia Court of Appeals held that the employee "had been authorized to request a troublesome patron to leave ..." and was only doing his/her job. In the case at bar, the majority agreed that physical contact and interaction with patrons was incidental to, if not a necessary element of, Thomas's employment. However, it states that, "[i]n contrast, Thomas, in her authorized performance as a box office cashier, would have had no opportunity for such interaction." I fail to see the distinction. Thomas necessarily dealt with hundreds of patrons personally, face to face, in one night at work. They were separated by only a thin pane of glass and were a doorway apart. Where a waitress would personally interact with only a portion of the restaurant patrons, a ticket cashier personally interacts with hundreds of moviegoers per evening. Like the waitress in Odom, Thomas was also authorized to request patrons to leave. Would-be moviegoers not of sufficient age to view certain films were to be sent away. It cannot be said that it was unforeseeable that during this amount of interaction animosity would not arise.
¶ 42. Moreover, the entire incident took only a few moments. In Odom the Georgia court stated that "[t]he very idea that one may be an employee one minute and the very next minute become angry, commit an intentional tort, and in that act not be an employee, is too fine-spun a distinction." Id. at 887 (citations omitted). Likewise, this Court, in Interstate Co. v. McDaniel, 178 Miss. 276, 173 So. 165 (1937), held that:
Where the injurious act complained of is not so separated by time and logical sequence from the business of the master as to make it a separate and independent transaction, the master is not relieved of liability. Where the whole transaction, as here, consumes only a few moments and has all the features constituting one continuous and unbroken occurrence, a master is not relieved of liability because the servant stepped outside of his authority.
Id. at 166. See also Horton v. Jones, 208 Miss. 257, 44 So.2d 397 (1950) (quoting McDaniel). Thomas was hired by Cinemark to sell tickets to the movies being shown at its theater. She was acting within the scope of her employment when she refused to sell tickets to the two minors accompanying Adams because she had been instructed to deny minors admission to "R" rated films. In my opinion, she was also acting within the scope of her employment when, moments after refusing to sell the tickets, she assaulted Adams as she tried to thwart Thomas's instructions and enter the theater.
¶ 43. Cinemark's claim that it is not liable simply because it trained Thomas not to leave her booth has no justification under established Mississippi law. For over one hundred years, this Court has *1169 held that an employer cannot escape liability simply because an employee commits a crime or intentional tort which was not authorized by the employer. In Richberger v. American Exp. Co., 73 Miss. 161, 18 So. 922 (1896), this Court rejected a rule that would only impose liability on an employer when the employee's acts were motivated by a desire to further the employer's business. In reversing the trial court, this Court, enumerated the public policy basis for this rule:
The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another.
Richberger, 18 So. at 924 (quoting Rounds v. Delaware, L. & W. R.R., 64 N.Y. 129, 134 (1876)). See also Walters v. Stonewall Cotton Mills, 101 So. at 498 (holding that "[a] master is responsible for the wrongful acts of his servant committed in the business of the master and within the scope of his employment, even though the servant in doing the act departed from the instruction of the master."). "Moreover, disobedience of servants to instructions as to the particular manner in which their duties should be discharged is so frequent as to become a matter of common knowledge of which employers must take notice." Loper v. Yazoo & M.V.R. Co., 145 So. at 745. Cinemark placed Thomas in the position to harm Adams. Though she went too far in her zeal to enforce the policies of her employer, Cinemark's negligent entrustment of Thomas was the cause of Adams's injuries. But for her employment at Cinemark and the responsibility entrusted to her by Cinemark, Adams would not have been injured.
¶ 44. Whether Cinemark instructed Thomas not to leave the booth is perhaps a mitigating factor for damages purposes, but it is not determinative of its liability. It created this danger and the harm that befell Adams by placing Thomas in the position to commit this tort. Though not an insurer of Adams's safety, Cinemark had a duty to exercise reasonable care to protect her from reasonably foreseeable injury at the hands of another. This duty is heightened when the injury causing instrumentality was put in motion by Cinemark. It held out its theater as a safe place to seek entertainment and hired Thomas.
¶ 45. Moreover, it is not an unreasonable conclusion that Thomas's action was an attempt by her to handle things in the absence of a manager. It necessarily follows from that conclusion that Cinemark's negligence in failing to promptly provide a manager to handle the situation was also a substantial factor in creating this unfortunate situation. Affirmance of the trial court's grant of summary judgment is to affirm the double negligence of Cinemark's negligent entrustment of Thomas and its failure to provide a manager when, according to Cinemark's instructions, Thomas requested one. This I cannot do. Between two innocent parties, the one who placed the injury causing mechanism in motion should bear the loss.
¶ 46. Adams was assaulted and beaten on Cinemark's property by Cinemark's employee. In my opinion, the trial court should be reversed, and Adams allowed to pursue her claim for compensation against Cinemark. Employers must be legally responsible when they place employees in positions dealing with the public and these employees, incidental to their employment, commit intentional torts.

*1170 II
¶ 47. The majority holds that granting the summary judgment motion without conducting a hearing was harmless error. It looks to the disputed facts and determines they are not material. I disagree. The disputed facts left to be resolved at trial are whether Thomas was acting within the scope of her employment when she assaulted Adams and what was Adams's demeanor and the exact tenor and nature of the words spoken by her.
¶ 48. In my opinion, the nature of the words spoken by Adams are significant. Adams could have questioned Thomas's authority. Her words could have signaled to Thomas that despite theater rules, she was going inside without a ticket. She could have told Thomas that despite your master's command for you to instruct me to wait here for a manager, I'm going inside and find him myself, and when I do, I am going to get you fired. Likewise, Adams's demeanor could have led Thomas to believe that she was going to become violent or destructive herself. In short, the events that led up to the altercation have significance as to whether Thomas had a justifiable belief, however skewed her reaction to it may have been, that Adams presented a threat to the responsibility entrusted her by Cinemark.
¶ 49. In any event, because I believe that the grant of summary judgment was in error, it follows a fortiori that I believe the failure to allow a hearing was not harmless error.

III
¶ 50. The law governing the grant or denial of a motion for summary judgment is well established. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Cinemark put the events that caused injury to Adams in motion. It hired Thomas, thereby creating this danger, and it should be held responsible. Giving Adams the benefit of every doubt, as we must, I cannot say that material facts are not in dispute. Considering that Thomas's motivation in attacking Adams could have been a mixed one, both for her personal vendetta and in furtherance of Cinemark's business, whether Thomas's actions were within her scope of employment is an issue best resolved by a jury.
¶ 51. Cinemark has a duty to screen its employees and provide members of the public who come to its theater a safe place to spend an evening. This is not to say that employers must know everything about their employees, or that an employer should be liable every time an employee disregards their instructions, goes berserk, and attacks a member of the public. Each case should be analyzed on its own facts. Sometimes the employer's instructions will be sufficient, in other situations a thorough background check and probationary period would be necessary. In this case, a jury should determine whether Cinemark should be held responsible for the actions of Thomas.
¶ 52. Because I disagree with the majority's conclusion that no material fact existed as to whether Thomas was acting within the scope of her employment, I would reverse the trial court's grant of summary judgment and remand the case for trial.
McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.
NOTES
[1] Adams is in fact Marie's legal guardian.
[2] Thomas was also arrested and pled guilty to simple assault.
[3] The Cinemark Employee Guidelines handbook states that with regard to admitting patrons: "The usher is to approach the Customer first with an outstretched hand and an appropriate greeting such as, `Good evening... may I tear your tickets, please.' Everyone entering the theatre ... must buy a ticket." (emphasis in original). Also, the handbook states that "[t]he Cashier needs to stay in the box office at all times. Do not leave the box office unattended."
[4] M.R.C.P. 61 addresses harmless error and states:

No error in either the admission or the exclusion of evidence and no error in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
(emphasis added).
[5] Federal courts employ a more liberal definition of "hearing." Specifically,

[t]he word "hearing" within the meaning of Rule 56 has been held to refer to the final submission of summary judgment motion papers, rather than implying a requirement that a full-fledged hearing with receipt of oral evidence take place with every motion. Frequently, the pleadings and other materials submitted with the summary judgment motion are considered sufficient material to satisfy the Rule 56(c) hearing requirement.
11 James Wm. Moore et al., Moore's Federal Practice § 56.15[1][a] at 56-200.1 (3d ed.2002).