# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01006-COA

**BRENDA FRANKLIN**                                                                                          **APPELLANT**

**v.**

**CORNELIUS TURNER D/B/A GOLDEN AGE**                                          **APPELLEES**
**APARTMENTS, CORNELIUS TURNER D/B/A**
**MAJOR MANAGEMENT, INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRENT HAZZARD |
| | SORIE S. TARAWALLY |
| | KELLY GUNTER WILLIAMS |
| ATTORNEYS FOR APPELLEES: | FRANCES R. SHIELDS |
| | KATRINA SANDIFER BROWN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEES |
| DISPOSITION: | AFFIRMED - 03/29/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    This appeal stems from a complaint filed on February 19, 2013, by Brenda Franklin,

a tenant of Golden Age Apartments, against Cornelius Turner d/b/a Golden Age Apartments

and Major Management (collectively referred to as "Turner"), and Robert Swinney, seeking

$1,000,000 in damages.  The complaint alleged that Swinney, the caretaker/employee of the

apartment complex, was liable for assault and battery against Franklin.  It further alleged

Turner breached a duty to protect residents from the actions of its employee and was liable for its failure to monitor and maintain safe premises. Finally, the complaint asserted that all defendants were liable for false imprisonment, gross negligence, and intentional/negligent infliction of emotional distress.[1]

¶2. According to Franklin, Swinney came to the door of her apartment at approximately 5:30 p.m. on January 20, 2012, saying that her dog had gotten loose and bitten another tenant. He allegedly told her the police had been called, and she allowed him in her apartment to wait. Though Franklin claimed that she did not know Swinney, she fed him dinner. After he had eaten, she asked him to leave, but he sexually assaulted her and stayed at her apartment until early the next morning.[2]

¶3. Franklin did not report the attack until January 23, 2012, when she told Billy Joe White, the complex's former caretaker with whom she had a prior relationship, about the incident.[3] Over Franklin's objections, White contacted the police. Law enforcement came to Franklin's apartment to question her, and she was sent to the hospital for examination. Her medical records indicated no apparent injuries, and there had been too much passage of

---

[1] The complaint inaccurately states that the assault occurred on February 20, 2012, and that Franklin reported it to police on that same day.

[2] For purposes of summary judgment, we accept these statements as true. *See Nelson v. Sanderson Farms Inc.,* 969 So. 2d 45, 52 (¶14) (Miss. Ct. App. 2006) ("On summary judgment, we are required to accept all evidence and inferences favorable to the plaintiff's case as true." (citing *Harris v. Shields,* 568 So. 2d 269, 275 (Miss. 1990))).

[3] There is disputed evidence whether White was still the caretaker at the time of the incident. He was in the hospital when the attack occurred, and while Franklin contends Swinney was caretaker when he assaulted her, Turner management testified that White was not released from his caretaking duties until January 31, 2012.

time since the attack to collect any lab specimens. Swinney was arrested, and after spending three months in jail because he could not post bail, he entered an *Alford* plea to attempted aggravated assault.[4] He received ten years in the custody of the Mississippi Department of Corrections (MDOC), with nine years and 272 days suspended, ninety-three days served, and five years of supervised probation.

¶4.    Swinney, however, has continued to protest his innocence, testifying that he had a prior consensual sexual encounter with Franklin, and she had invited him over for dinner that evening. The record does contain substantial contradictory testimony about the events surrounding the incident. Although Franklin initially claimed she had never seen or met Swinney prior to the attack, she later admitted that she had his phone number and called him after the attack. Subpoenaed phone records show that between the time of the assault and Swinney's arrest, Swinney and Franklin sent several text messages to one another.

¶5.    Additionally, Franklin claimed that she sat in her tub "scrubbing her skin" for hours that following morning after Swinney left and saw no one that day. But she subsequently admitted that she let Swinney back into the apartment that following day to fix her tub. Another man, Richard Boyd, confirmed that he and Swinney had been in Franklin's apartment to fix her tub on January 21, 2012. A neighbor, Joyce Kimball, testified that she saw Swinney go into Franklin's apartment on January 20, and heard laughing and giggling coming from Franklin's apartment until Kimball feel asleep at midnight. Kimball said she witnessed Swinney leaving the next morning and "heard Mrs. Franklin telling Mr. Swinney

---

[4] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

to return soon to make some repairs to her apartment."

¶6. On April 2, 2014, Turner filed a motion for summary judgment, or in the alternative, a partial motion for summary judgment, claiming that Swinney was not its employee at the time of the alleged assault and maintaining that Swinney did not sexually assault Franklin. Turner also submitted an alternative argument that even if Swinney were an employee, he was acting outside his scope of employment "had he committed a sexual act toward Franklin while 'on-duty.'" Franklin filed a motion to extend deadlines on April 29, 2014, and a response to Turner's summary-judgment motion on May 12, 2014, arguing Turner had "ratified" Swinney's actions by continuing his employment as a caretaker after he had entered his felony guilty plea.

¶7. After a motions hearing held on May 28, 2014, the circuit court granted Turner's motion for summary judgment on May 30, 2014, finding that Turner had met its burden of proof that Swinney was not an employee "who was acting within the course and scope of his duties at the time of the alleged attack" and that Turner had no knowledge that Swinney "may have a violent nature or that an atmosphere of violence exists on [its] premises." Noting that while it "may be a question for the jury as to whether . . . Swinney was an employee or agent" at the time of the attack, the court concluded "that the alleged sexual assault of [Franklin] by Swinney was not within the scope of his employment, if any."[5] The circuit court further held that retaining Swinney as an employee after his entry of a guilty plea for attempted aggravated assault, while "ill-advised," was "insufficient to impose liability on the Turner

_____

[5] While the circuit court uses the term "alleged," we decline to utilize that term, as Swinney did enter a guilty plea to attempted aggravated assault.

4

defendants for the original acts." The circuit court denied Franklin's motion for an extension of deadlines, finding the issue was rendered moot based on its grant of summary judgment.

¶8.    The circuit court entered a final order under Mississippi Rule of Civil Procedure 54(b).[6] Franklin asserts two issues on appeal: (1) whether the circuit court erred in granting Turner's motion for summary judgment; and (2) whether the court erred in denying Franklin's motion to extend deadlines. Finding the circuit court did not err in granting the motion for summary judgment, we affirm. Franklin's second issue is thereby rendered moot by our decision.

## DISCUSSION

**Whether the circuit court erred in granting summary judgment.**

¶9.    We conduct a de novo review of a circuit court's grant or denial of summary judgment. *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶9) (Miss. 2007) (citing *Leffler v. Sharp,* 891 So. 2d 152, 156 (¶9) (Miss. 2004)). "Summary judgment is appropriate when the evidence is considered in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* (citing M.R.C.P. 56(c)).

   *A.    Whether Swinney was Turner's employee.*

¶10.    Franklin claims that the circuit court erred in accepting Turner's assertion that Swinney was not an employee and in failing to apply the employee/independent contractor test. However, the record shows the circuit court, in fact, made no determination as to

---

[6] Swinney is not a party to this appeal.

5

Swinney's employment status in its order. Rather, it recognized that it "may be a question for [a] jury" whether Swinney was an employee on the day of the attack. The circuit court, instead, went on to address the necessary question of "whether the alleged actions took place within the scope of [Swinney's] employment." Thus, it clearly gave the benefit of the doubt to Franklin, the nonmovant, on this issue, reaching its decision to grant summary judgment based on the assumption that, even if Swinney was an employee, Turner could not be held vicariously liable for Swinney's alleged tort, as he was acting outside any scope of employment.[7]

¶11.    We find no error in the circuit court's analysis. "An 'employer is responsible for the torts of its employee *only* when the torts are committed within the scope of the employment.'" *Parmenter v. J & B Enters. Inc.*, 99 So. 3d 207, 215-16 (¶14) (Miss. Ct. App. 2012) (emphasis added) (quoting *Favre v. Wal-Mart Stores Inc.,* 820 So. 2d 771, 774 (¶5) (Miss. Ct. App. 2002)). "[A] master is not liable for its employee's actions if the employee 'abandoned his employment and went about some purpose of his own not incidental to the employment.'" *Id*. at 216 (¶14) (quoting *Favre,* 820 So. 2d at 774 (¶5)). In *Adams v. Cinemark USA Inc.,* 831 So. 2d 1156, 1157-58 (¶¶1-5) (Miss. 2002), a patron brought suit against Cinemark under the doctrine of respondeat superior for injuries sustained when a

---

[7] Whether Swinney is an employee of Turner, while a disputed question of fact, is therefore not a material issue of fact. *See Bradley v. Kelley Bros. Contractors,* 117 So. 3d 331, 338 (¶27) (Miss. Ct. App. 2013) ("To survive summary judgment, it is not enough that disputed facts exist – such facts must also be material . . . in an outcome determinative sense." (citing *Citifinancial Retail Servs. v. Hooks,* 922 So. 2d 775, 779 (¶18) (Miss. 2006))).

6

Cinemark employee struck the patron after refusing to admit the patron and two minors to an R-rated film. Evidently, the patron and employee exchanged harsh words prior the altercation. The box office employee's duties included selling movie tickets and handling money. *Id.* at 1158 (¶2). The on-site manager stated in a deposition that employees were trained to avoid confrontation with a patron and to get a manager if a dispute arose. *Id.* at (¶6). The supreme court concluded the employee's assault of the patron was not incidental to her employment, reasoning: "[The employee's] act was motivated by personal animosity. She was never vested with any duty on that day other than selling tickets. She assaulted [the patron] because of her anger, not because she was concerned about protecting Cinemark's property or increasing Cinemark's profit." *Id.* at 1160 (¶13). Therefore, summary judgment was properly granted, as there was no genuine issue of material fact as to whether the employee was acting within the scope of her employment in the assault of the patron. *Id.* at 1161 (¶16).

¶12.   Assuming Swinney was employed as a caretaker for Turner at the time of the attack, nothing within his job description required him to assault Franklin in her apartment. Thus, Swinney would have been acting for purposes unrelated to his employment. Furthermore, as Franklin acknowledges in her reply brief, she "has never argued that the attack was within . . . Swinney's scope and course of employment." We find no error in the circuit court's grant of summary judgment to Turner based on the theory of respondeat superior, and we affirm the court's judgment on this issue.

> B.     *Whether Turner is liable for negligently hiring and retaining Swinney as an employee.*

7

¶13.    Franklin claims that Turner was liable because it knew of Swinney's propensity for violent behavior and still hired and retained him as an employee.  To support her claim, Franklin submitted deposition testimony by the former caretaker, White, that Turner knew Swinney had harassed another tenant, Bertha Gibson, and that Swinney had a drinking problem.  "In Mississippi, 'an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness.'" *Parmenter*, 99 So. 3d at 217 (¶18) (quoting *Doe v. Pontotoc Cty. Sch. Dist.,* 957 So. 2d 410, 416-17 (¶16) (Miss. Ct. App. 2007)).

¶14.    We find that Franklin has provided no evidence Turner had any prior knowledge Swinney had a propensity for the type of violent behavior to which he pled guilty.  White never said he ever saw Swinney inebriated and admitted he had no firsthand knowledge that Swinney was fired for drinking.  Furthermore, had Turner fired Swinney for being "a drunk" prior to this incident, as claimed by White, this fact does not show that Swinney had the propensity to sexually assault someone.

¶15.    White did testify that Gibson had cried to him "a couple of times saying [Swinney] wouldn't leave her alone."  If White was Turner's employee/caretaker at the time he talked to Gibson, knowledge of his behavior would be imputed to Turner.  *See Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1276 n.9 (Miss. 2007) (noting that "[a]n employee's knowledge is imputed to his employer" (citing 30 C.J.S. *Employer-Employee* § 211 (1992))).  However, White's testimony in regard to his employment status at the time Gibson allegedly made those statements is vague.  He initially said Gibson made the statements "[j]ust before

8

[Swinney] messed with [Franklin]," which would have been when White was employed as the caretaker. But upon further questioning, White recanted his testimony, stating: "I don't remember if I was caretaker then or not. No, I don't think so. Unh-unh (negative response), I wasn't the caretaker then." Thus, as Franklin has not provided sufficient evidence that White was caretaker when Gibson made those statements to create a genuine issue of material fact, we cannot find that White's knowledge would be imputed to Turner. We further find that the alleged statements made by Gibson are insufficient to impute any knowledge to Turner that Swinney had the propensity to commit sexual assault. *See Glover*, 968 So. 2d at 1287 (¶76) (finding that the employer "had no knowledge of [the defendants'] propensity to rape" even though "there [was] conflicting evidence as to whether [the employer] knew of the [defendants'] propensities to fight[.]").

¶16. Morever, White further said that he discounted Gibson's claims, as she "wasn't right" and had exhibited unstable behavior in the past, such as running naked in the parking lot, throwing her clothes in the dumpster, and setting her apartment on fire.

> Q. So you really didn't put a lot of stock in what she said?
>
> A. No, I didn't – I didn't put a lot of stock into what she was saying. That's why I didn't say nothing about Mr. Swinney messing with her, because I didn't really know, you know. She just – she just said he did.[8]

Based on all the foregoing, we cannot find a genuine issue of material fact from which negligent hiring could be attributed to Turner.

---

[8] There was no testimony by Gibson to support these statements; White testified that she had committed suicide shortly thereafter.

¶17. "[U]nsupported speculation and allegations are not sufficient to defeat a motion for summary judgment." *Adams*, 831 So. 2d at 1161 (¶19). The record reflects that Turner ran a criminal background check on Swinney; it showed no criminal offenses. Accordingly, we find this issue is without merit, as Franklin has failed to produce any evidence to show Swinney had a criminal record or any violent tendencies, and nothing indicates any actual or constructive knowledge by Turner.

> C. *Whether Turner's retention of Swinney as an employee after his arrest and guilty plea ratified his actions and created liability for Turner.*[9]

¶18. Franklin further argues that the retention of Swinney as an employee after he pleaded guilty to attempted aggravated assault "ratified" his actions and creates a genuine issue of material fact that Turner is vicariously liable for Swinney's actions. For an employer to be liable for an employee's actions, "the act must have been one authorized by the employer prior to its commission, *ratified after its commission*, or committed within the scope of the employment." *Horton v. Jones*, 208 Miss. 257, 261, 44 So. 2d 397, 400 (1950) (emphasis added). "Where an employer learns of the past intentional conduct and does nothing to reprimand the employee, this acts as a ratification." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (¶17) (Miss. Ct. App. 2006) (citing *Royal Oil Co. v. Wells,* 500 So. 2d 439, 446 (Miss. 1986); *Allen v. Ritter,* 235 So. 2d 253, 255-56 (Miss. 1970)). Franklin cites *Jones* to support her claim. In *Jones*, this Court held that a genuine issue of material fact existed that B.L. Development was liable for the supervising employee's sexual harassment of a

---

[9] For the purposes of summary judgment, this Court will assume Swinney was an employee at the time of the assault. *See Nelson,* 969 So. 2d at 52 (¶14).

subordinate employee because the supervisor took "a tangible employment action against an employee[/victim]," and the harassment "was aided" by the agency relationship. *Id*. at 967 (¶¶20, 22). We find *Jones* distinguishable from the present case. As stated, the supervisor's sexual harassment of the employee, while not considered to be within the scope of employment, was aided by his position as an agent of the employer. And the "notorious" conduct by the supervisor, Jimmy Miller, was ongoing and known not only to his own supervisor, Rhonda Kennedy, but to several others as well. However, no disciplinary action was taken against Miller until the harassment was reported to Kennedy's supervisor. *Id*. at 966 (¶18).

¶19. In *Allen*, 235 So. 2d at 255, a malicious-prosecution case, the supreme court held: "The principals, where they direct, where the act is within the scope of authority of the agent, or where the principals participate in or ratify the actions of the agents, are liable." (Citation omitted). Because there was conflicting evidence whether the employee was acting within the scope of the employment, and whether the master ratified the act, it held that such questions "should have been submitted to the jury." *Id*. The supreme court made no determination as to whether the retention of the employee in that case constituted ratification.[10]

---

[10] We find the facts of the other case cited by *Jones* are not applicable to the present case. In *Royal Oil Co.*, 500 So. 2d at 441, an employee, Pamela Wells, was accused of embezzlement by another employee, Curtis Miller, and the manager, April Miller (who were married to one another). The employee brought suit for malicious prosecution and argued Royal Oil was liable as the company ratified the Millers' behavior by failing to "reprimand or fire [them.]" *Id*. at 446. The supreme court held the evidence showed that the Millers *acted with authority* on behalf of Royal Oil, and it upheld the verdict in favor of Wells.

¶20. However, as the circuit judge stated in his order granting summary judgment, our supreme court has held: "While the fact of . . . retention of the offending servant in the employment of the master may be admitted in evidence as bearing upon the ratification, the mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act." *Wells v. Robinson Bros. Motor Co.*, 153 Miss. 451, 459, 121 So. 141, 142-43 (1929). In *Craft v. Magnolia Stores Co.*, 161 Miss. 756, 764, 138 So. 405, 407 (1931), the supreme court reiterated:

> Having reached the conclusion that the act of [the servant] was unauthorized so far as the master was concerned, and that he was at the time acting upon his own initiative for purposes of his own and not in the performance of any duty expressed or implied which he owed the master, it then follows that the retention of [the servant] in its employ with knowledge of his tortious act would not render the principal or master liable.
>
> The mere fact that such employee is retained in the master's employ, and mere silence on the master's part relative to the [tort], is not sufficient evidence that the master adopted the act, nor does it lead to the inference that he assumes responsibility for the servant's slander of another.

¶21. Accordingly, based on the facts before us, we affirm the circuit court's holding that Turner's retention of Swinney as caretaker would not be considered ratification, rendering it vicariously liable for his tortious action, and affirm the circuit court's grant of summary judgment.

¶22. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**