RUSSELL, J.,
for the Court:
¶ 1. Kerri Parmenter appeals the Marshall County Circuit Court’s order granting summary judgment in favor of McDonald’s Corporation Inc. (McDonald’s) and the circuit court’s order granting a directed verdict in favor of J & B Enterprises Inc. Finding no error, we affirm the circuit court’s order granting summary judgment and the circuit court’s order granting a directed verdict.
FACTS AND PROCEDURAL HISTORY
¶ 2. On August 11, 2000, Parmenter and her cousin, Dana Churchill, ordered food at the drive-thru window of McDonald’s in Holly Springs, Mississippi. Because their order was taking longer than they expected, Parmenter and Churchill entered the establishment to inquire about the status of their food. At some point, a verbal altercation occurred in the lobby between Parmenter and Kesha Jones, a cashier. Parmenter admitted stating, “Bitch, you need to get out of my face” to Jones. Other witnesses testified Parmenter yelled a racial slur toward Jones. In any event, after this verbal altercation occurred, Jones left the lobby and returned to the kitchen, where she retrieved a spatula. Thereafter, Jones returned to the lobby and proceeded to beat Parmenter with the spatula. Parmenter was struck on her cheek, head, and arm.
¶ 8. On September 20, 2003, Parmenter filed a complaint against McDonald’s and J & B Enterprises.[1] Parmenter alleged the following causes of action within her complaint:
That [Parmenter’s] cause of action arises in tort as a result of injuries and damages proximately caused by the Defendants, [McDonald’s and J & B Enter *211 prises], in Holly Springs, Mississippi, on or about August 11, 2000.
That the Defendants ... [are] liable to [Parmenter] for the actions of the [e]m-ployee[,] Kesha Jones[,] under the doctrine of [r]espondeat Superior. In addition to said responsibility, [Parmenter] would further allege that the Defendant[s][are] liable to [Parmenter] in the following manner:
A. Negligently hiring a person (Ke-sha Jones) whom the Defendants knew or should have know[n] was a person of violent propensities;
B. Negligence in failing to adequately train the personnel employed and on duty at said McDonald’s in Holly Springs, Mississippi on or about August 11, 2000;
C. Negligence in failing to adequately supervise and control the premises and employees at said McDonald’s in Holly Springs, Mississippi on or about August 11, 2000;
D. Negligence in failing to have adequate security present and on duty at said McDonald’s in Holly Springs, Mississippi on or about August 11, 2000.
Nowhere within Parmenter’s complaint did she allege assault, battery, or any intentional tort, and she did not name Jones as a defendant.
¶ 4. On December 19, 2007, the circuit court granted summary judgment in favor of McDonald’s. The order stated, in pertinent part, as follows:
This dispute arose over an incident at the Golden Arches (McDonald[’]s) in Holly Springs, Mississippi. Apparently [p]laintiff, Kerri Parmenter, became upset over her victuals order and made inquiry about its condition. It is unclear to the [c]ourt the exact cause for [plaintiffs displeasure, whether the Big Mack was soggy, the fries limp, or the coffee cold, but in any event, [p]laintiff was unhappy and apparently voiced her annoyance to an employee who was engaged as a cashier. Apparently[,] harsh words were exchanged, the exact nature of which are unknown to the [e]ourt at this time. It appears the employee took serious exception to [p]laintiff s inquiry, retreated to the recesses of the restaurant, retrieved a long cooking utensil which was referred to as a metal spatula[,] and used this instrument in a fashion contrary to its intended use or for which it was designed, but a use with which all mothers of young children are acquainted.
Byrd Management, Inc. is a franchise of the McDonald[’]s Corp. Plaintiff contends that McDonald[’]s is vicariously liable to [p]laintiff for her injuries. McDonald[’]s has no right to hire or fire; to direct the franchise how to conduct its day-to-day business; to direct the hours the employees work; to direct who should be or should not be hired; to prescribed the details of the kind and character of the work to be completed by the individual employees, nor to direct the details of the manner in which the day-to-day work of each employee was completed.
McDonald[’]s shares in the success of the business in that the higher the gross receipts the more McDonald[’]s receives and of course is concerned with the results of the franchisees’ efforts but not with the details of the work of the individual employees.
THEREFORE, the [m]otion for [s]um-mary [j judgment on behalf of Me-Donald[’]s Corp. should be and is hereby sustained, the [c]ourt hereby finding that there is no vicarious liability on McDonald[’]s Corp. to cause it to be *212 liable for the actions complained of by [pjlaintiff, and therefore the claim against McDonald[’]s Corp[.] is hereby dismissed with prejudice.
¶ 5. After the entry of summary judgment in favor of McDonald’s, Parmenter and J & B Enterprises proceeded to trial. Parmenter called various witnesses, and their testimonies will be discussed more fully herein as needed. After Parmenter rested her case-in-chief, J & B Enterprises moved for a directed verdict, which was granted by the circuit court. That order read as follows:
This cause came on to be heard by the [cjourt, upon the [mjotion by [djefen-dant, J & B Enterprises, for [djirected [vjerdict, after [pjlaintiff rested on her case[-]in[-]chief. The [cjourt, after hearing argument of counsel, a review of the record[,j and due consideration thereof, was of the opinion that said [mjotion was well taken and should be granted. Specifically, this [cjourt finds that [pjlaintiff has failed to meet the elements of any of her claims against [djefendant.
Plaintiff failed to present any evidence that [djefendant knew or should have known of the violent propensity of its employee, Kesha Jones. Plaintiff failed to present evidence that the actions of Kesha Jones arose in the course and scope of her employment with [djefen-dant. Additionally, [pjlaintiff failed to present any evidence that Kesha Jones was not properly trained in accordance with the [djefendant’s practices and procedures. Further, there is no evidence presented that [djefendant’s policies, practices[,j and procedures are improper or inadequate, much less that such caused or contributed to [pjlaintiffs alleged damages.
Further, [pjlaintiff failed to present any medical evidence to a reasonable degree of certainty that [pjlaintiffs injuries were caused by or contributed to by [djefendant. Even if Dr. Robert Cooper had provided such testimony, he is not qualified to provide opinions as to the causation of his [p]ost[-][t]raumatic[-][s]tress[-][d]isorder diagnosis. He testified that he is not familiar with the standard of care of a psychologist or psychiatrist. His methodology for diagnosing PTSD and/or relating it to the subject incident has not been the subject of peer review, nor did he testify that it is a commonly accepted methodology by qualified physicians/counselors. Additionally, he admitted that he did not take a social history of [pjlaintiff prior to making the diagnosis, nor did he obtain any records of medical or other treatment/counseling [pjlaintiff received for her pre-existing mental/emotional condition before and after the subject incident. Dr. Cooper’s opinions are not reliable. Further, in light of the lack of expert proof on the issue, this [cjourt finds that it would be impossible for the jury to allocate damages, and any effort to do so would be mere speculation. Finally, [pjlaintiff did not properly plead the claim for intentional tort under the doctrine of respondeat superior. Defendant made a proper motion to dismiss in its [ajnswer. To the extent [pjlaintiff did properly plead this claim, it is barred by the applicable one[-]year statute of limitations. To the extent necessary, [djefendant’s Rule 15(a), (b) motion is granted. It is, accordingly, ORDERED that [djefendant’s [mjotion for [djirected [vjerdict is granted and this case is dismissed, with prejudice. This is a final [ojrder.
¶ 6. Parmenter appeals the circuit court’s order granting summary judgment and the circuit court’s order granting a directed verdict. Finding no error, we affirm both orders.
*213 DISCUSSION
I. Whether the circuit court erred in granting summary judgment in favor of McDonald’s.
¶ 7. “We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment.” Holmes v. Campbell Props., Inc., 47 So.3d 721, 723 (¶ 6) (Miss.Ct.App.2010) (citing Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002)). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court views “the facts in the light most favorable to the nonmovant” in determining whether the trial court properly granted summary judgment. Holmes, 47 So.3d at 724 (¶ 7) (citing Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶12) (Miss.1999)). “The burden of demonstrating that there are no genuine issues of material fact is upon the movant, and the non-moving party must be given the benefit of every reasonable doubt.” Miller v. R.B. Wall Oil Co., 970 So.2d 127, 130 (¶ 5) (Miss.2007) (citing Moss v. Batesville Casket Co., 935 So.2d 393, 398 (¶ 16) (Miss.2006)).
¶ 8. “The nonmoving party must diligently oppose summary judgment.” Holmes, 47 So.3d at 724 (¶ 7) (citing Grisham v. John Q. Long V.F.W. Post, No. 1057, Inc., 519 So.2d 413, 415 (Miss.1988)). Thus, “[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). “Issues of fact ... are present where one party swears to one version of the matter in issue and another says the opposite.” Moss, 935 So.2d at 398 (¶ 17) (quoting Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990)). A material fact is one that “tends to resolve any of the issues properly raised by the parties.” Id. at 398 (¶ 16) (quoting Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995)). A fact is material if it is outcome determinative. Id. at 399 (¶ 17) (citing Simmons v. Thompson, Mach. of Miss., Inc., 631 So.2d 798, 801 (Miss.1994)). Additionally, summary judgment is appropriate “where the non-mov-ant fails to establish the existence of an essential element of that party’s claim.” Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1199 (¶4) (Miss.2008) (citing Smith v. Gilmore Mem’l. Hosp., Inc., 952 So.2d 177, 180 (¶ 9) (Miss.2007)). With these standards in mind, we will consider the issues raised by the parties to determine whether there is any genuine issue of material fact.
¶ 9. An “employer is responsible for the torts of its employee only when the torts are ‘committed within the scope of the employment.’” Favre v. Wal-Mart Stores, Inc., 820 So.2d 771, 773 (¶ 5) (Miss.Ct.App.2002) (quoting Odier v. Sumrall, 353 So.2d 1370, 1372 (Miss.1978)). Before we reach the issue of liability, we must first determine whether McDonald’s was in fact an “employer” or acting as a master of another party:
Our cases in the field revolve around the idea of control. The right to control is as important as de facto control at the tortious moment, for the right to control the work of another “carries with it the correlative obligation to see to it that no torts shall be committed” by the other in the course of the work. Therefore, one who controls, or has the right to control, *214 the work of another may be liable as the master of that party. However, the potential control does not create liability unless the alleged master had the right to control the means as well as the ends. “There is another fact premise sometimes pointing to non-liability: If the party ... is concerned only with the ultimate results and not the details of the work.”
Allen v. Choice Hotels Int’l, 942 So.2d 817, 821 (¶ 6) (Miss.Ct.App.2006) (quoting Fruchter v. Lynch Oil Co., 522 So.2d 195, 199 (Miss.1988)) (internal citations omitted). We use the following non-exclusive list for determining whether a party is a master of another:
(1) Whether the principal master has the power to terminate the contract at will;
(2) whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment;
(8)whether he furnishes the means and appliances for the work;
(4) whether he has control of the premises;
(5) whether he furnishes the material upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output;
(6) whether he has the right to prescribe and furnish the details of the kind and character of work to be done;
(7) whether he has the right to supervise and inspect the work during the course of the employment;
(8) whether he has the right to direct the details of the manner in which the work is to be done;
(9) whether he has the right to employ and discharge the subemployees and to fix their compensation; and
(10) whether he is obliged to pay the wages of said employees.
Allen, 942 So.2d at 821 (¶ 7) (quoting Kisner v. Jackson, 159 Miss. 424, 428-29, 132 So. 90, 91 (1931)).
¶ 10. Applying these factors, we find that McDonald’s did not act as the master or employer of the Holly Springs McDonald’s franchise owned and operated by J & B Enterprises. James Byrd, the owner, testified McDonald’s did not own the subject location, and the franchise agreement did not dictate the day-to-day operations of the franchise. As noted in David Barlett’s affidavit, McDonald’s did not control the day-to-day operation of the franchise, it did not have the authority to hire or fire employees, and it did not own or operate the franchise at issue. Specifically, Barlett’s affidavit reads as follows:
1. My name is David Barlett. I am employed by McDonald’s Corporation as [s]enior [cjounsel, and I am authorized to give this affidavit on behalf of McDonald’s Corporation.
2. The plaintiff brought a lawsuit against McDonald’s Corporation alleging damages for an injury sustained at the McDonald’s restaurant located at Highway 7 and Highway 78 (Clarice Drive), Holly Springs, Mississippi on August 11, 2000.
3. McDonald’s Corporation does not own the business specified above.
4. McDonald’s Corporation does not operate the business specified above.
5. McDonald’s Corporation does not, nor does it have the right to, hire, discharge!,] or discipline employees of the business specified above.
*215 6. McDonald’s Corporation does not pay the utilities for the business specified above.
7. McDonald’s Corporation does not sell any products at the business specified above.
8. McDonald’s Corporation does not supply any products to the business specified above.
9. McDonald’s Corporation does not own or operate any business which supplies products to the business specified above.
10. McDonald’s Corporation does not, nor does it have the right to, control the day-to-day activities necessary to carrying on the business operations of the restaurant specified above.
11. At the time of the alleged incident, the restaurant business specified above was owned and operated by James F. Byrd, Jr. pursuant to the terms of a franchise agreement dated September 15,1993.
¶ 11. Parmenter failed to produce any evidence contradicting the contents of this affidavit or McDonald’s witnesses which would support her assertion that McDonald’s controlled the daily operation of the franchise. Instead, Parmenter merely argues that the McDonald’s logo on the building and on the employees’ uniforms, the franchise agreement between J & B Enterprises and McDonald’s, and the fact that customers visit McDonald’s due to its reputation for good food warrant a finding that McDonald’s should be liable under the doctrine of respondeat superior. However, Parmenter fails to cite any relevant authority to support her position. Thus, under Mississippi Rule of Appellate Procedure 28, her argument is procedurally barred. Notwithstanding the procedural bar, we find that these allegations are without merit.
¶ 12. We find that McDonald’s was not an employer of Jones. McDonald’s did not control the day-to-day operations of the franchise. McDonald’s had no right to hire or fire employees, to direct the hours the employees worked, or to direct the details of the manner in which the day-today work of each employee was completed. Based on the facts of this case, McDonald’s cannot be held liable for the actions of Jones under the doctrine of respondeat superior because McDonald’s was not a master or employer of Jones. Therefore, there was no genuine issue of material fact to be submitted to a jury regarding McDonald’s liability. As such, we affirm the circuit court’s order granting summary judgment in favor of McDonald’s.
II. Whether the circuit court erred in granting a directed verdict in favor of J & B Enterprises.
¶ 13. We employ a de novo standard of review in reviewing a trial court’s grant of a motion for directed verdict. Fred’s Stores of Tennessee, Inc. v. Pratt, 67 So.3d 820, 823 (¶ 12) (Miss.Ct.App.2011) (citing Ducksworth v. Wal-Mart Stores, Inc., 832 So.2d 1260, 1262 (¶2) (Miss.Ct.App.2002)). This Court considers the evidence in the “light most favorable to the non-moving party[,] and [we] give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial.” Id. “If those facts and inferences, so viewed, can be said to create a question of fact from which reasonable minds could differ, then the matter should be submitted to the jury[.]” Id.
A. Respondeat Superior
¶ 14. An “employer is responsible for the torts of its employee only when the torts are ‘committed within the scope of the employment.’ ” Favre, 820 *216 So.2d at 773 (¶ 5) (quoting Odier, 353 So.2d at 1372). “The test used in determining whether an employee’s tortious act is within the scope of his employment is whether it was done in the course of and as a means to the accomplishment of the purposes of the employment and therefore in furtherance of the master’s business.” Id. at 773-74 (¶ 5). “Also included in the definition of ‘course and scope of employment’ are tortious acts incidental to the authorized conduct.” Adams v. Cinemark USA, Inc., 831 So.2d 1156, 1159 (¶ 9) (Miss.2002) (quoting Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250, 252 (1945)). “That an employee’s acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to that conduct.” Id. at 1159 (¶ 9) (citing S. Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107,109 (1933)). However, a master is not liable for its employee’s actions if the employee “abandoned his employment and [went] about some purpose of his own not incidental to the employment.” Favre, 820 So.2d at 774 (¶ 5).
¶ 15. In Adams, 831 So.2d at 1157-59 (¶ 1), a patron brought suit against Cine-mark under the doctrine of respondeat superior for injuries she sustained when an employee struck the patron after refusing to admit the patron and two minors to an R-rated film. Apparently, the patron called the employee a “bitch,” which led to the altercation. At the time, the employee was engaged as box office employee, and her job duties include selling movie tickets and handling money. Id. at 1158 (¶ 2). The on-site manager stated in his deposition that employees were trained to never argue with a patron, avoid confrontation, and get a manager if a dispute arose. Id. at (¶ 6). Our supreme court noted that it was “obvious that [the employee’s] tortious act of assaulting [the patron] was not authorized or in furtherance of Cinemark’s business.” Id. at 1159 (f 10). Therefore, the supreme court considered whether the employee’s conduct was “incidental to” her employment. Id. The supreme court held that the employee’s assault was not incidental to her employment, reasoning: “[The employee’s] act was motivated by personal animosity. She was never vested with any duty on that day other than selling tickets. She assaulted [the patron] because of her anger, not because she was concerned about protecting Cinemark’s property or increasing Cinemark’s profit.” Id. at 1160 (¶ 13). Therefore, the supreme court held that there was no genuine issue of material fact as to whether the employee was acting within the scope of her employment in the assault of the patron; therefore, summary judgment was properly granted. Id. at 1161 (¶ 16).
¶ 16. In Favre, 820 So.2d at 772 (¶ 1), an employee of Wal-Mart was involved in an altercation with a co-worker at the Wal-Mart Auto Service Center. The employee was off-duty at the time, but the coworker was on duty at the time as a attendant in the auto service center. Id. The employee filed suit against Wal-Mart and the co-worker under the doctrine of respondeat superior for his injuries. Id. This Court affirmed the trial court’s order granting summary judgment in favor of Wal-Mart, reasoning:
[The co-worker] was employed as an attendant in the auto service center. Nothing in [the co-worker’s] job description required him to involve himself in altercations with other employees or patrons. [The co-worker] was clearly acting for his own purposes and not incidental to his employment with Wal-Mart when he involved himself in the altercation with [the employee]. Wal-Mart is not responsible or liable for [the co-worker’s] actions during his alterca *217 tion with [the employee]. Accordingly, this issue does not present a genuine issue of material fact for a jury to determine. Summary judgment was proper on this issue.
Id. at 774 (¶ 6).
¶ 17. In the instant case, Jones was employed as a cashier at the time of her altercation with Parmenter, and nothing within her job description required her to involve herself in an altercation, whether verbal or physical, with patrons of the restaurant. As in Fame, Jones was clearly acting for purposes unrelated to her employment when she beat a customer with a spatula in the lobby of the restaurant, as nothing within her job description required her to engage in such behavior. And similar to Adams, Jones’s act of hitting Parmenter was motivated by personal animosity and anger, presumably from Parmenter calling Jones a “bitch,” and Jones was never vested with any duty on that day other than working the cash register. Clearly, Jones was not acting within the scope of her employment or performing duties incidental to her employment when she engaged in the altercation with Parmenter. Therefore, J & B Enterprises is not liable for Jones’s actions under the doctrine of respondeat superior. As such, there is no genuine issue of material fact for the jury to consider, and the directed verdict in favor of J & B Enterprises was proper.
B. Negligent Hiring and Negligent Training
¶ 18. Parmenter also raised a claim for negligent hiring. In Mississippi, “an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee’s incompetence or unfitness.” Doe v. Pontotoc County Sch. Dist., 957 So.2d 410, 416-17 (¶ 16) (Miss.Ct.App.2007) (citing Eagle Motor Lines v. Mitchell, 223 Miss. 398, 411-12, 78 So.2d 482, 486-87 (1955)). “Relatedly, if an employer exercises due care in the hiring of its employees, that employer will not be liable for the injuries of a third party unless that party can prove the employer knew or should have known of the incompetence and unfitness of the employee.” Id. at 417 (¶ 16) (citing Jones v. Toy, 476 So.2d 30, 31 (Miss.1985)). Thus, “[a] plaintiff must prove the defendant had either actual or constructive knowledge of an employee’s incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party.” Id. “ ‘Actual notice’ is defined as ‘notice expressly and actually given ...’ while ‘constructive notice’ is defined as ‘information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.’ ” Id. (quoting Black’s Law Dictionary 1062 (6th ed.1990)).
¶ 19. In the instant case, Katina Daugherty, the former manager and supervisor, testified that criminal background checks are conducted on all applicants before the interview. If an applicant had a criminal record or a history of violence, that applicant would not be hired. Daugherty also testified that Jones was “not a violent person at all,” and she never saw Jones assault, attack, or curse at anyone. Upon review of the record, we find Parmenter failed to produce any evidence to show Jones had a criminal record or any violent tendencies, and there is nothing to indicate actual or constructive knowledge by J & B Enterprises. Therefore, the issue of negligent hiring is without merit.
¶ 20. Parmenter also raises a claim for negligent training. This Court has previ *218 ously held that a “violent act of an employee];,] standing alone[,] is simply insufficient to defeat summary judgment on an allegation of failure to train.” Holmes, 47 So.3d at 728 (¶ 26). We have reviewed the record and have found no evidence of improper or negligent training.
¶ 21. James Byrd, the owner of J & B Enterprises, testified that his employees are trained to “satisfy the customer, fix the problem” and “[i]f they can’t fix the problem, they are instructed to get the manager on duty.” Daugherty testified all employees are trained prior to the first day of work during orientation. After orientation, the employees go through another period of training on the floor by working with another employee. Daugherty verified that all employees are trained to apologize and call a manager if a customer had a complaint. The manager would then handle the complaint and attempt to make the customer happy. She further stated that if there was a customer cussing and threatening an employee, the employee is trained to call the police. Daugherty also testified that if an employee fought with a customer, such an altercation would be outside the scope of the employment and the employee would be fired because such behavior would violate what the employee was taught in training. Finally, Daugherty testified Jones properly went through all of the practices and procedures.
¶22. Upon review of the record, we find Parmenter failed to produce any evidence, other than the mere fact of the altercation occurring, to support a genuine issue as to her negligent-training claim. Therefore, this issue is without merit.
III. Whether the circuit court erred in disqualifying Parmenter’s witness, Dr. Robert Cooper, as an expert witness.
¶ 23. “The standard of review for the admission or suppression of evidence, including expert testimony, is an abuse of discretion.” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 457 (¶ 8) (Miss.2010). “A trial judge’s decision as to whether a witness is qualified to testify as an expert is given the widest possible discretion.” University of Mississippi Med. Ctr. v. Pounders, 970 So.2d 141, 145 (¶ 13) (Miss.2007). Rule 702 of the Mississippi Rules of Evidence, which governs expert testimony, states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Further, it is well established that “the trial judge is considered the gatekeeper and determines the value of the expert testimony.” Utz, 32 So.3d at 457 (¶ 9). “As the gatekeeper, the trial judge ensures that any expert testimony is relevant and reliable.” Id. In determining whether testimony is reliable, our supreme court has said “the expert testimony must demonstrate that his opinion is ‘based upon scientific methods and procedures, not unsupported speculation.’ ” Id. at (¶ 10).
¶ 24. “ ‘Relevant Evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. “All relevant evidence is admissible, except as otherwise provided by the Constitution of *219 the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.” M.R.E. 402. However, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶ 25. In the instant case, Par-menter argues the circuit court erred in initially allowing her expert, Dr. Robert Cooper, to testify as an expert and later disqualifying him as an expert witness. Parmenter called Dr. Cooper in support of her alleged mental damages. Dr. Cooper testified he was board certified in bariatric medicine (weight control), and he did his fellowship in family medicine. Dr. Cooper further stated he was not board certified in psychiatry or psychology. As previously noted, the circuit court disqualified Dr. Cooper as an expert witness, reasoning as follows:
Further, [pjlaintiff failed to present any medical evidence to a reasonable degree of certainty that [pJlaintifFs injuries were caused by or contributed to by [djefendant. Even if Dr. Robert Cooper had provided such testimony, he is not qualified to provide opinions as to the causation of his [p]ost[-][t]raumatic[-][s]tress[-][d]isorder diagnosis. He testified that he is not familiar with the standard of care of a psychologist or psychiatrist. His methodology for diagnosing PTSD and/or relating it to the subject incident has not been the subject of peer review, nor did he testify that it is a commonly accepted methodology by qualified physicians/counselors. Additionally, he admitted that he did not take a social history of [pjlaintiff prior to making the diagnosis, nor did he obtain any records of medical or other treatment/eounseling [pjlaintiff received for her pre-existing mental/emotional condition before and after the subject incident. Dr. Cooper’s opinions are not reliable. Further, in light of the lack of expert proof on the issue, this [cjourt finds that it would be impossible for the jury to allocate damages, and any effort to do so would be mere speculation.
We agree with the circuit court’s finding. It was well within the circuit court’s discretion to disqualify Dr. Cooper in light of his testimony at trial. This issue is without merit.
IV. Whether the circuit court erred in refusing to admit the deposition testimony of Trudi Porter.
¶ 26. Parmenter argues that the deposition testimony of Trudi Porter, a clinical psychologist, should have been admitted into evidence. Rule 32(a) of the Mississippi Rules of Civil Procedure states:
At the trial or upon the hearing of a motion of an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof]
(Emphasis added). Rule 804(b)(1) of the Mississippi Rules of Evidence provides:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former Testimony. Testimony given as a witness at another hearing of the same or a differ *220 ent proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
(Emphasis added). The comment to Rule 804(b)(1) explains that “[a]n essential ingredient of the former testimony exception has always been the unavailability of the declarant.”
¶ 27. In the instant case, Parmenter failed to subpoena Porter, and she failed to properly designate Porter as a witness. Most importantly, however, Parmenter failed to prove Porter’s unavailability as required under Rule 804(b)(1). Therefore, the circuit court properly excluded Porter’s deposition from evidence. This issue is without merit.
¶ 28. THE JUDGMENTS OF THE MARSHALL COUNTY CIRCUIT COURT ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.

. Parmenter and Churchill were originally plaintiffs in this action, but Churchill was later dismissed from the suit. McDonald’s, McDonald’s Restaurants of Mississippi Inc., Byrd Management Inc., J & B Enterprises, James F. Byrd d/b/a McDonald’s in Holly Springs, Mississippi, and XYZ Corporation were originally named as defendants. McDonald’s Restaurant of Mississippi Inc., James Byrd, and Byrd Management Inc. were eventually dismissed from the case, and no party was ever substituted for XYZ Corporation.