JAMES, J.,
for the Court:
¶ 1. Justin Howse sustained injuries from an incident with Alex Jevette Archie, an employee of Brentwood Behavioral Healthcare of Mississippi. Howse filed a civil action, suing Archie and the facility. The Circuit Court of Rankin County granted Brentwood’s motion for summary judgment. Howse appeals the circuit court’s judgment, raising the following issues: (1) whether the circuit court failed to apply the correct standard when considering the standard of care applicable to Brentwood, (2) whether Brentwood was negligent; and (3) whether Brentwood is vicariously liable for the intentional acts of Archie. Finding no error, we affirm.
FACTS
¶ 2. Archie, an employee at Brentwood, removed Howse, a student and patient, from a classroom for misbehaving. The record is unclear as to what happened next, but ultimately, Howse suffered an injury at the hands of Archie, and the act was witnessed by another employee through an open door. Brentwood then reported the matter to the Attorney General’s office for prosecution. On June 11, 2010, Archie was fired from his position at Brentwood. Archie pled guilty to abuse of a vulnerable adult. On October 21, 2011, Howse filed a personal-injury complaint against Archie and Brentwood. Brent-wood filed a motion for summary judgment, which the circuit court granted. Howse appeals.
STANDARD OF REVIEW
¶ 3. This Court “employs a de novo standard of review when reviewing a trial court’s grant of summary judgment.” Sykes v. Home Health Care Affiliates, Inc., 125 So.3d 107, 109 (¶ 5) (Miss.Ct.App.2013). Further,
[t]his Court ... looks at all the eviden-tiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view, the moving party is entitled to [a] judgment as a matter of law, summary judgment should ... be entered in his favor. Otherwise, the motion should be denied.
Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So.2d 1244, 1246 (¶ 6) (Miss.2002). “The burden of demonstrating that there are no genuine issues of material fact is upon the movant, and the non-moving party must be given the benefit of every reasonable doubt.” Parmenter v. J & B Enters., Inc., 99 So.3d 207, 213 (¶ 7) (Miss.Ct.App.2012).
DISCUSSION
I. Whether the circuit court failed to apply the correct standard of care for the institution.
¶ 4. Howse argues that the circuit court failed to apply the correct standard of care. Howse also suggests that an exception should be carved out of the current caselaw to hold mental-healthcare providers liable for the criminal acts of employees.
¶ 5. The Mississippi Supreme Court has adopted the Texas standard of care: “[A] hospital is under a duty to exercise reasonable care to safeguard the patient from any known or reasonably ap-prehensible danger from herself and to exercise such reasonable care for her safety as to her mental and physical condition, *129 if known, may require.” Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 923 (¶ 8) (Miss.2006). A hospital is liable “for want of ordinary care....” New Biloxi Hosp., Inc. v. Frazier, 245 Miss. 185, 196, 146 So.2d 882, 887 (1962). Brentwood provided ordinary care because it took steps to remove a disruptive patient away from the others and provided a room where Howse could regain his composure.
¶ 6. Also, Dr. Cynthia Undesser stated in her deposition: “As the medical director here, I’m responsible for everything that happens here.... Directly responsible, personally responsible, no. Medically, legally responsible, yes.” Howse relies on this one statement in a deposition to establish the standard of care. As Brentwood correctly points out, Dr. Undesser’s comments are her subjective belief as to her obligations. Further, there is no testimony as to what the national standard of care is or what is considered to be the norm in facilities similar to Brentwood.
¶ 7. Howse asserts that Dr. Undesser is a child-psychiatrist expert and medical director of an institution for children; and as such, she is qualified to testify to the standard of care. This Court has stated that “a plaintiff is generally required to present expert medical testimony, ... establishing that the defendant physician or hospital failed in some causally significant respect to conform to the required standard of care.” Delta Reg’l Med. Ctr. v. Taylor, 112 So.3d 11, 24 (¶ 37) (Miss.Ct.App.2012). However, from the deposition excerpts in the record, there does not seem to be a foundation to qualify Dr. Undesser as an expert to testify as to the standard of care of health facilities to their patients.
? 8. Howse argues that there should be an exception carved out for the mental-healthcare providers to be held responsible for the criminal actions of their employees. However, the Mississippi Supreme Court has stated that “[w]e recognize that it is not for the courts to decide whether a law is needed and advisable in the general government of the people. That is solely a matter for the wisdom of the Legislature.” City of Belmont v. Miss. State Tax Comm’n, 860 So.2d 289, 307 (¶ 43) (Miss.2003) (citation omitted). Howse asks this Court not only to hold Brentwood accountable for an unforeseeable assault on a patient, but to establish caselaw holding healthcare providers liable for the criminal acts of their employees. Such an action is something best reserved for the Mississippi Legislature. Accordingly, this issue is without merit.
II. Whether Brentwood was negligent.
¶ 9. Howse argues that Brentwood was negligent in failing to have a working video camera in the time-out room where Howse was injured.
¶ 10. It is a well-settled rule that “[t]o prevail on a negligence claim, a plaintiff must prove by a preponderance of the evidence each element of negligence: duty, breach of duty, proximate causation, and injury.” Schepens v. City of Long Beach, 924 So.2d 620, 623 (¶ 9) (Miss.Ct.App.2006). Howse only states that a camera was not in the room where Howse was assaulted. But all four elements of negligence must be satisfied.
¶ 11. Here, there is no evidence that Brentwood breached the duty owed to Howse as a patient and proximately caused an injury. The record states that Howse was “hurt” by Archie, but there are no medical records or documents that provide details about the nature of his injury. Also, Howse has not produced any evidence that the lack of cameras in the timeout room was the proximate cause of his injury.
*130 ¶ 12. Additionally, even if Brent-wood were found negligent, a “criminal act[ ] can be [an] intervening cause[ ] which break[s] the causal connection with the defendant’s negligent act, if the criminal act is not within the realm of reasonable foreseeability.” Williams ex rel. Raymond v. Wal-Mart Stores E., L.P., 99 So.3d 112, 118 (¶ 19) (Miss.2012). Brentwood exercised its due diligence in hiring Archie by checking his references and, as far as the record shows, there were no reported instances of abuse of patients at Brentwood by Archie. Further, Archie was observed through an open door by a fellow employee. Therefore, the lack of a camera in the time-out room did not contribute to the injury. Accordingly, this issue is without merit.
III. Whether Brentwood is vicariously liable for the intentional acts of Archie.
¶ 13. Howse argues that Archie was acting within his scope of employment when Howse was injured. Howse contends that since Archie was removing a disruptive patient from the classroom and escorting him to the time-out room, Archie was acting within the scope of his employment as a mental-health technician. Howse also argues that Archie’s intentional acts were incidental to the authorized conduct of his employment. Further, Howse suggests that Archie’s guilty plea to a charge of felony abuse of a vulnerable person is evidence of Brentwood’s liability for his injuries.
¶ 14. “It is well established that an employer is responsible for the torts of its employee only when the torts are committed within the scope of employment.” Hall v. Mi Toro No. 2, Inc., 115 So.3d 125, 128 (¶ 11) (Miss.Ct.App.2013) (quotation marks omitted). When determining whether a tort was committed in the scope of employment, we determine “whether it was done in the course of and as a means to the accomplishment of the purposes of the employment and therefore in furtherance of the master’s business.” Parmenter, 99 So.3d at 216 (¶ 14). The definition of scope of employment also includes “tortious acts incidental to the authorized conduct.” Id.
¶ 15. However, it should be noted that just because “an employee’s acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to that conduct.” Id. An employer is not liable “if the employee ‘abandoned his employment and went about some purpose of his own not incidental to the employment.’ ” Hall, 115 So.3d at 129 (¶ 11) (citation omitted). Further, “[t]here is no vicarious liability where an agent acted with personal or malicious motive, unless the principal authorized or ratified the acts.” Mabus v. St. James Episcopal Church, 884 So.2d 747, 763 (¶36) (Miss.2004).
¶ 16. Here, Archie was acting within the scope of his employment when he removed Howse for being disruptive. Archie deviated from the scope of employment after he and Howse entered the time-out room and Archie assaulted Howse. Archie’s actions were not incidental to authorized conduct as an employee of Brentwood. Howse was not injured as a result of Archie trying to restrain him or carry out any other action related to his employment as a mental-health technician. The actions of Archie did not accomplish the purposes of employment as a mental-health technician. Further, Brentwood did not authorize Archie to assault Howse, nor did it ratify Archie’s actions. Instead, Brentwood immediately suspended Archie the day of the incident and fired him the *131 next day. Brentwood also turned the case over to the Mississippi Attorney General in a timely fashion. Accordingly, this issue is without merit.
CONCLUSION
¶ 17. For the foregoing reasons, we affirm the circuit court’s judgment granting summary judgment to Brentwood.
¶ 18. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.